No. 9509.

FLASH, PRESTON & Co. vs. AMERICAN GLUCOSE COMPANY.

Parties offering goods and wares on the market, through brokers whom they employ as their agents for such purposes, are bound for all the stipulations made in their behalf by their said agents. This obligation includes guarantees that perishable goods will keep good and merchantable during a certain period of time.

Goods of a uniform nature, such as manufactured liquid goods, for instance, syrup, which are sold to be delivered in separate packages, may be returned as unmerchantable, even though some of the packages have the appearance of being good and sound.

The redhibitory defects of such goods cannot be tested under the rule of law which provides that the vice of one of several things sold together, gives rise to the redhibition if all of the things were matched, such as a pair of horses; but it must be governed by the principle which releases the purchaser from his contract when it appears that the defect of the thing sold renders its use so inconvenient as to justify the conclusion, that he would not have purchased it had he known of the vice,

APPEAL from the Civil District Court for the Parish of Orleans.. Rightor, J.

*White & Saunders* for Plaintiffs and Appellees :

When a contract is made verbally and partially executed, the acceptance of a writing which incorporates its terms erroneously does not prevent oral testimony of the true terms.. 111 Mass. 45; 45 N. Y. 712.

*Leovy & Leovy* and *J. P. Blair* for Defendant and Appellant :

1. The sale is considered perfect between the parties as soon as there exists an agreement for the object and the price thereof, although the object has not yet been delivered, nor the price paid. C. C. 2456. The place of delivery is presumed to be where the goods happen to be at time of sale. C. C. 2484 ; Pothier on Contract of Sale, p. 30 ; Benjamin on Sales. (1 Amer. Ed.) § 682, p. 596. When the vendor is to send on the goods, delivery to the common carrier is delivery to the vendee. Benjamin on Sales, § 181. Hence, in the present case, the sale was perfect and the ownership and risk in the buyer, so soon as the syrup was measured, put in barrels, and delivered on board the cars at Leavenworth, Kansas.

2. The implied obligation of the seller to warrant the buyer against the hidden defects or redhibitory vices of the thing sold, is fully discharged when, at the time of sale, the goods are in good condition and of a merchantable quality. When a vice makes its appearance subsequent to the sale, the burden of proof is on the buyer to show that the defect existed at the time of sale. C. C. 2530 ; 5 Ann. 588, Baker vs. Irvin ; 30 Ann. 907, Peterkin vs. Oglesby ; Pothier on Contract of Sale, pp. 128 and 130.

3. Parol evidence is inadmissible to prove warranty when the sale is in writing. Benjamin on Sales, § 621 ; Abbott's Trial Evidence p. 344.

4. A broker has no implied authority to warrant the merchantable quality of the goods sold. Benjamin on Sales p. 545 (note) ; Ewell's Evans on Agency, p. 173 (note) ; Upton vs. Suffolk County Mills. 11 Cush. 586 ; Dodds vs. Farlow, 11 Allen, 426. Especially is this true when the act is not justified by the usage of the trade. Story on Agency, 225, 226 ; 11 Allen, 426. An authority to warrant does not carry with it authority to give a continuous warranty. 11 Cush. 586.

5. Except in special cases, where things are sold together, as a pair of horses, the whole purchase should not be returned because some articles are defective. C. C. 2540 ; Pothier on Contract of Sale, p. 139 ; 3 Ann. 377, Huntington vs. Lowe.

6. The rights of the parties were not affected by the resale under the circumstances of this case When the buyer has been put in default, the vendor may sell as agent of the buyer. C. C. 2565 ; 8 Mar. (O. S.) 402, Gilly vs. Healey ; 2 Ann. 640, White vs. Kearney; Benjamin on Sales, pp. 683, 688 ; 9 R. 495; 14 Ann. 352.

It is not necessary for the resale to be at public auction. 2 Ann. 640; Benjamin on Sales, p. 684 (note); 6 Ann. 381, White vs. Broom.

7. The measure of damages is the difference between the contract price and the market price at the time of resale, after deducting from the latter the reasonable expenses attending the resale. C. C. 2565. 2555; 30 Ann. 264, Bartley vs. City of New Orleans.

The opinion of the Court was delivered by

POCHÉ, J. This suit grows out of a contract of sale entered into by the parties hereto, on the 3d of March, 1883, the main issue of which is predicated on the following salient facts:

Plaintiffs agreed to purchase from the defendant's predecessor, 1500 barrels of glucose syrup, to be delivered in New Orleans in equal instalments of 500 barrels a month in each of the months of April, May and June, 1883.

During April and May shipments were made aggregating 850 barrels, which arrived in apparent good order and were received and stored by plaintiffs.

After disposing, in due course of their business, of 167 barrels of the syrup, plaintiffs discovered that the balance of the lot then in warehouses, was fermenting and souring, whereupon they notified the defendant company through a broker named Brodnax, a resident of New Orleans, with whom they had dealt in the purchase, that the goods, consisting of 683 barrels of syrup, which had been warranted not to ferment during summer, were not of the quality which they had purchased, and that the syrup was at the risk of the defendant company as vendor of the same.

The goods were taken, under protest, by the defendant, and were sold on the market at various prices, all under the contract price, and as unmerchantable goods.

Plaintiffs claim reimbursement of freight and other charges on the 683 barrels which they refused to keep, and defendant claims in reconvention the difference between the contract price and the price which was actually obtained on the 683 barrels referred to.

This appeal is prosecuted by the defendant from a judgment which allowed plaintiffs' claim, and rejected its reconventional demand.

The contention presents two main questions:

1. Whether the goods were sold under a guarantee of non-fermentation during summer.

2. Whether the goods returned by plaintiffs were in a state of fermentation, such as to render them unmerchantable at the time that they were tendered back to the vendor.

Plaintiffs rely on the affirmation of both of these propositions, and defendant's reconventional demand turns upon negative proof of at least one of them.

1. The first point involved in the guarantee alleged by plaintiffs. is to ascertain whether the contract of sale of March 3, 1883, was made verbally or in writing.

Contending that the contract had been made in writing, defendant objected to the introduction of parol testimony to prove the agreement, and reserved a bill from an adverse ruling.

The record proves beyond a doubt that the agreement on the third of March was made in plaintiffs' office, after negotiations which had lasted several days, and that it was made verbally between William Flash, a member of plaintiff's firm, and Brodnax, acting in behalf of the defendant company.

But it appears that a few days afterwards, the broker signed and handed to a member of the firm, a document containing the principal stipulations of the contract; and on this fact alone is vested the argument that the contract was made in writing.

It is clear to our minds that this document amounted to nothing more than a memorandum, intended to facilitate the memory of the contracting parties, but that it by no means evidences the slightest intention of the parties to enter into a written contract. It was not signed by the plaintiffs, and unless supported by parol testimony it surely could not have been judicially enforced against them as a contract. Hence the district judge did not err in admitting parol testimony of the agreement.

On the question of *continuing guarantee vel non*, the evidence is decidedly conflicting; and to that, as the pivotal question in the case, we have given very careful study and very serious consideration. Our conclusion is that the weight of evidence, both direct and circumstantial, is largely in favor of a guarantee from fermentation during summer, and that such a guarantee was the determining reason in plaintiffs' mind to yield to the broker's repeated importunities to sell them those goods, for use in the principal sugar and molasses market in the country. Several other dealers in molasses and syrups testify that in their contracts with the defendant and other glucose factories, the goods sold for several years previous to 1883, had always been guaranteed against summer fermentation; this is conceded in their testimony by the broker, Brodnax, and by Jones, his partner, but they assert that in the early part of the year 1883, they had received written and positive instructions from the defendant corporation to cease selling any of their goods in Southern climates under such a guarantee.

But unfortunately for defendant's cause, Brodnax and Jones, although specially requested thereto, failed to produce any proof of such written instructions.

Defendant next contends that Brodnax was simply a broker, and was not its agent; that therefore he had no legal authority to bind the company in such a stipulation.

The record satisfies us that he was the duly accredited agent of the company, with full and special power to bind his principal in just such a contract, in terms as he stipulated with plaintiffs in the premises.

It is unnecessary to detail in full all the elements of testimony and all the circumstances which have led us to that conclusion.

But the very contention that such a power had been withdrawn from him, only a short time before the date of this contract, is clearly pregnant with the admission that he had been clothed with the power, and we note his utter failure to prove the withdrawal of the same. But on the contrary, his acts and dealings in the matter of this very contract, leave no reasonable doubt of the fact that he was not only the broker, but the fully accredited agent of the defendant. 33 Ann. 1364, Rochi vs. Schwabacher & Hirsch.

2. The record is yet more complete on the second point of the defendant's contention as to the unmerchantable condition of the 683 barrels of syrup at the time that they were tendered to the vendor as an avoidance of the sale.

It appears from the evidence that the consignment of 500 barrels for the June instalment was in a fermenting condition when the goods arrived in New Orleans, and that it was not accepted by plaintiffs.

Brodnax, to whom the bills of lading were, on that account, transferred, took charge of the goods and disposed of them to the best advantage of his principal, the defendant company, after paying the freight and other charges due thereon.

That circumstance brought about an examination of the lot of 683 barrels then stored for account of plaintiffs, and they were found in a fermenting condition.

It is true that many of the barrels were subsequently found not to be technically fermenting or sour. But this circumstance cannot support defendant's argument that the whole lot should not have been returned.

In large commercial transactions, purchasers of commodities in separate packages cannot be required or even expected to pick and retain certain packages and to refuse others.

Article 2540 of our Code does not apply to such a case, which is governed by the general principle as embodied in Article 2520, which reads as follows ·

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it, had he known of the vice."

Levy vs. Succession.

Under the evidence as we have read it, plaintiffs' case can success-fully stand the test of that rule.

They proposed to buy a lot of glucose syrup for the use of their trade during the summer months, and they bought an article which was warranted not to ferment during that time.

On examination, at the end of June, they discover, as shown in the record, that one-half of the packages containing the goods are fermenting; they have every reason to believe and in fact to know that the evil will increase instead of decreasing : is it natural or rational to suppose that they would have bought the syrup, even with the guarantee, had they known that it would ferment at the first approach of summer weather?

This question is answered by the defendant and its agent themselves through their own acts. The record shows that they offered and sold these identical goods on the market at reduced prices and as unmerchantable goods, and are thus estopped from denying that they were fermenting.

We therefore conclude that substantial justice has been meted out to the parties by the district judge.

Judgment affirmed.