E. R. GODFREY & SONS CO. v. ODENWALD & SON, ET AL.

(July 2, 1928. Opinion and Decree.)
(August 13, 1928. Rehearing Refused.)
(October 3, 1928. Writ of Certiorari and Review denied by Supreme Court.)

Warren O. Coleman, of New Orleans, attorney for plaintiff, appellee.

Edgar M. Cahn, of New Orleans, attorney for defendant, appellant.

OPINION

JONES, J. This is an appeal from a judgment in favor of plaintiff after a hearing of plaintiff's case only. Upon being served with the original and supplemental

petitions of plaintiff, the defendants excepted to the various petitions, and later filed answer. Though the case was fixed for trial in the usual way, through an oversight on the part of defendant's counsel, he did not observe the date and was not advised of the judgment until after the judgment was signed.

In original petition plaintiff alleges as follows:

On May 29, 1920, it purchased from Richeimer Brokerage Company, broker for B. & G. Agency of New Orleans, which said agency was selling for defendant a consignment of Creoleans, or pralines, as shown by the original sales ticket annexed to it; said ticket provided that defendant should replace any unsalable merchandise with fresh stock; shipment was made and petitioner, in accordance with said agreement, paid defendant eleven hundred thirty-nine and 25-100 dollars; at the time of purchase plaintiffs were told by Richeimer Brokerage Company that they would be the exclusive wholesale grocery distributors of Creoleans in Milwaukee, were also promised certain advertising and specialty men to work the territory, but these promises were broken and Creoleans were sold to other distributors in Milwaukee; at various times plaintiff advised defendants of the failure of their agents to carry out agreement, but complaints were ignored, and as a result of defendants' breach of contract, plaintiffs have on hand a certain quantity of spoiled Creoleans and are entitled under the terms of their agreement to a partial refund of the price paid for said merchandise, amounting to one thousand, five hundred, five and 14-100 dollars.

Defendants filed exceptions of inconsistency, vagueness and no cause of action, which were apparently referred to the merits.

Two years later, on November 12, 1923, plaintiff filed a supplemental petition, in which it is alleged in detail that the Chicago brokers were agents of the B. & G. Selling Company and that the last mentioned was throughout the agents of defendant.

Defendants excepted to this petition upon the same grounds as before and further urged that it changed the cause of action.

Defendants then answered denying that any of the alleged representations were made by them or by anyone with the authority to do so on their behalf, and further denying that defendants had any dealings whatsoever with plaintiff directly or indirectly in connection with the said sales; denied that anyone had the right to make the representations as set up in plaintiff's petitions.

Defendants further showed that sales ticket referred to in plaintiff's petition as "Exhibit A" stipulated and provided that "all disputes arising out of this contract shall be arbitrated in the usual manner," and that as plaintiff had not sought such arbitration, it was without right to sue.

The only witness was George Tozer, buyer for plaintiff, whose testimony was taken under deposition in Milwaukee. Defendant, though duly served with the direct interrogatories did not cross them.

Tozer testifies in part as follows:

No signed order was given by plaintiff to the representative of the Richeimer Brokerage Company, but plaintiff later received from Chicago brokers an acknowledgment of his order, dated May 29, 1920, attached to the deposition.

Malnick, representing the Richeimer Brokerage Company, called on him and solicited an order for Creoleans, declaring that plaintiff would be the only wholesale grocer in Milwaukee to whom these products would be shipped; defendant would advertise in the newspaper and the factory would send representatives to the Milwaukee territory to assist plaintiff in selling the goods to the retailers.

Such advertising was not done, no salesmen were sent and several other firms in Milwaukee had this line of goods.

Defendant was notified on June 20th of this failure and on June 30th B. & G. Agency acknowledged this letter and asked details as to condition of merchandise. On July 1, 1920, plaintiff wrote B. & G. Agency, complaining of failure to advertise in Milwaukee papers and failure to send special salesman. In this letter plaintiff says that the candy was in good condition, but was unsalable, as others were selling it there and it was entirely unknown.

On August 19th, plaintiff again wrote defendants detailing specific breaches of the agreement and urging immediate remedial attention. On September 2nd, plaintiff wrote B. & G. Agency at their head office in New Orleans stating that nothing had been done to repair the damage, though Sidney Block, one of the defendant's representatives, had called and personally promised remedial measures. On September 14th, plaintiff again complained by letter direct to defendants of their gross misrepresentations and demanded attention. As no reply was received, a similar letter was sent on October 19th, but it was met with a like fate. On November 10th, plaintiffs wrote that they had on hand 341 half cases and 20 full cases of spoiled Creoleans and asked instructions as to disposition. On November 17th, defendants' attorney wrote plaintiffs denying liability. On June 9th, about ten days after sale (which was made on May 29th) Richeimer Brokerage Co. had written plaintiffs that advertising had been placed with a firm to start in Milwaukee papers "as soon as the two leading papers inform them of the proper distribution made by jobbing houses now handling Creoleans in your city." In this letter they asked for price of advertising in a pamphlet gotten out by plaintiffs for their customers called "The Drummer," that they might submit matter to manufacturers in New Orleans. They also promise specialty men at once. Either the copies or originals of all these letters are in the record.

First payment of one thousand, one hundred, thirty-nine and 25-100 dollars was made on June 14, 1920, shipment having been completed on June 8th and payment of balance due was made on June 24, 1924, Between these two payments, namely on June 9th, defendant, through its broker, Richeimer, had written plaintiff fully ratifying all representations now allowed by plaintiffs. Again on June 15, 1920, plaintiffs had written defendants, setting forth representations as to advertising and specialty salesmen.

If defendant considered these representations invalid, as it now claims, it should have repudiated them and called off the deal at once instead of accepting second payment in silent and apparent acquiescence.

Defendant makes two contentions here.

(1) That trial Judge erred in permitting evidence as to oral representations although it was not objected to on the trial,

because such evidence varied the written contract sued upon, namely sales ticket.

(2) Evidence does not sustain plaintiff's allegation as to spoilage.

Neither of these contentions is sustained. The sales ticket referred to in the petition and attached thereto was never signed by either party and was evidently intended merely as a memorandum of the transaction made by defendant's broker, which was later amplified by letter as shown above.

On this point the Supreme Court in Flash Preston Co. vs. American Glucose Co., 38 La. Ann. 7, uses the following language:

"It is clear to our minds that this document amounted to nothing more than a memorandum, intended to facilitate the memory of the contracting parties, but that it by no means evidences the slightest intention of the parties to enter into a written contract. It was not signed by the plaintiff, and unless supported by parol testimony it surely could not have been judicially enforced against them as a contract.

"Hence the district Judge did not err in admitting parol testimony of the agreement."

The case of Advance Thresher Co. vs. Rogers, 123 La. 1067, is not applicable. There the contract of purchase was signed by both the buyer and seller and the representations entirely contrary to the stipulations of their signed document were made on a separate sheet of paper, which was never brought to notice of plaintiff and were therefore of no legal effect. On the question as to admissibility of evidence, when basis therefor is alleged and no objection is made, see Yorke & Co. vs. Scott & Co., 23 La. Ann. 54; Brander vs. Goodin, 6 La. Ann. 521; Taylor vs. Harccoch, 14 La. Ann. 693.

Plaintiff supports his second contention by statement in letter of July 1st, reading, "We have no goods in bad condition in our stock," and also by Tozer's answer to interrogatory 17, made on December 1, 1924, more than four years after transaction reading: "Creoleans have been in public storage in Milwaukee since 1920 and now, I presume, they are in unsalable condition." These supports are insufficient.

Bad condition could hardly be expected three weeks after shipment. Further, on November 10, 1920, plaintiffs had written specifically of spoilage and asked instructions, but letter was ignored. Further, the evidence shows that every effort was made to sell this candy without success.

Plaintiffs were not obligated to arbitrate matter. See Saint vs. Martel, 127 La. 71, 53 So. 432.

Sales ticket provides "manufacturer agrees to replace any merchandise becoming stale and unsalable with fresh stock." This shows that defendants contemplated that the goods were perishable and probably would not stand long storage.

For above reasons the judgment is affirmed.