## No. 12,996.

### SUCCESSION OF THOMAS J. FOSTER, DECEASED.

#### SYLLABUS.

The fee of the attorney of the mortgage creditor, fixed in the act of mortgage on the amount of the debt forms part of the demand. It is part of the amount claimed and inseparable from it in matter of jurisdiction.

Where the mortgagee is compelled to employ counsel to attend to the collection of

his claim, and counsel render the services incident thereto, such as obtaining the payment of interest and granting extensions in expectation of full payment of the debt, interest and fees; HELD, the fee stipulated in the act of mortgage is due.

### ON REHEARING.

*On motion to dismiss the appeal.* Where a plaintiff claims an amount within the appellate jurisdiction of this court, and the defendant admits his indebtedness for part of such amount, but the District Court rejects the entire demand, and the record fails to disclose any deposit, consignment, or acceptance of the amount admitted to be due, such rejection is error affecting the whole claim and an appeal will lie to this court, notwithstanding that the amount claimed exclusive of the amount admitted to be due is less than two thousand dollars.

### ON THE MERITS.

1.  A stipulation, in an act of mortgage whereby notes are secured, which reads: "In case it becomes necessary to resort to legal proceedings for the recovery of the amount of said notes, or any part thereof, he (the mortgagor) hereby binds himself to pay the fees of the attorney who may be employed for that purpose, which fees are hereby fixed at ten per cent on the amount sued for," imposes upon the holder of the notes, seeking to recover the fees, the obligation of proving, in case his right to such recovery is contested, the existence of the conditions contemplated by the stipulation.

2.  It is not to be supposed that the contracting parties in such a case use the word "necessary" without reason or purpose, or that they intend thereby that the attorney's fees shall be paid where legal proceedings are unnecessary. This court will not, therefore, read that word out of the contract or invert its meaning.

3.  Nor will it be supposed that such parties predicate the right to recover, and the obligation to pay, attorney's fees, solely upon a resort (when necessary) to legal proceedings *"for the recovery of the amount,"* etc., if they intend that such right and obligation shall arise in case of a resort to legal proceedings for some other purpose than such recovery.

4.  Nor can the court ignore the language, used by the parties, to the effect that the fees to be recovered are "fixed at ten per cent. upon the amount sued for," and, in the absence of a "suit," and of anything, which, by reasonable interpretation, can be called a suit, fix and award the fees upon some other basis.

ON APPEAL from the Twenty-Fourth Judicial District Court for the Parish of St. Mary.   *Allen, J.*

*Beattie & Beattie* for Plaintiff in Rule, Appellant.

*D. Caffery & Son* and *Richardson & Soule* for Defendant in Rule, Appellee.

Argued and submitted January 13, 1899.
Opinion handed down March 20, 1899.
Rehearing granted April 17, 1899.
Opinion handed down on rehearing June 21, 1899.

The opinion on rehearing by MONROE, J.

## ON MOTION TO DISMISS.

*(The original opinion in this case was prepared by the late Justice Miller, and having been considered by the Court, subsequently, was adopted as the judgment of the Court).*

MILLER, J.    The appellant, the mortgage creditor of the succession of Thomas J. Foster, sought by rule in the lower court to compel the sale of the property of the succession to pay the debt amounting to two thousand two hundred dollars, and from the judgment against her on her rule, takes this appeal.

A motion to dismiss the appeal is made on the ground that the amount in dispute is below our jurisdiction.    It is urged that the controversy arose with reference to the fee of the attorney of the mortgage creditor, which was fixed by the act at ten *per cent.* on the amount of the debt.    That, in our view, forms part of the demand of the appellant, and it is the amount claimed, not one of the elements, that is the test of our jurisdiction.

The motion to dismiss is denied.

## ON THE MERITS.

The record shows the mortgage notes were placed by the mortgage creditor in the hands of her attorney, for collection.

On the application of the attorneys the interest on the notes was paid for two successive years and corresponding extensions were given by the attorneys; at the expiration of this last extension the administrator of the succession offered to pay the principal and interest of the debt, but refused to pay the attorneys' fees.    The attorneys insisted on that payment, as part of their client's debt.    On the rule to sell the property, the court sustained the contention that the mortgage

creditor could not demand the attorneys' fees and refused the order of sale. On this appeal the question is whether the succession of Foster is not liable for the fees claimed as part of the debt secured by the mortgage.

The notes were put in the attorneys' hands for collection. They rendered the usual services incident to such collections, obtained the payments of interest, and gave the extensions on the expectation of full payment of the debt, interest and fees.

The fee of the attorney stipulated in the act of mortgage, is due when the mortgagee is bound to employ counsel to attend to his claim. Levy vs. Beasly, 41st Ann., 632; Mullen vs. His Creditors, 39th Ann., 399.

The amount due by a succession, the delays given, the agreement arrived at about the claim, the written acknowledgement endorsed on the claim, rendered the succession responsible for the fee.

The suit was averted by mutual agreement with the parties and the debtor's acknowledgement of the debt. The acknowledgement, as endorsed on the claim at the time a delay was granted, was, in character, equal to a judgment. Succession of Remore, 29th Ann., 494.

Under the circumstances the proceedings were legal proceedings and fell within the stipulations of the act of mortgage.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed.

It is further ordered, adjudged and decreed, that the mortgaged premises described in the petition, be sold to pay and satisfy the amount due upon three mortgage notes, each for the sum of two thousand two hundred dollars, payable respectively on the twelfth day of March, of the years 1892, 1893 and 1894, and on which the interest has been paid up to March 12th, 1897, and for ten *per cent.* on the amount of the principal and interest due, and ten *per cent.* on the amount of the interest due and collected from March 12th, 1894, till paid, as attorneys' fees.

It is further ordered, adjudged and decreed that the succession pay the costs of both courts.

## ON REHEARING.

MONROE, J. Thomas J. Foster, now deceased, borrowed $6600.00 from Mrs. Cecelia T. Blake, testamentary executrix of Eugene W.

Blake, deceased, and gave, in acknowledgement thereof, his three promissory notes, of $2200.00 each, dated March 12, 1891, and made payable, upon the twelfth days of March, 1892, 1893, and 1894, respectively, with interest at the rate of 8% *per annum* from date until paid. To secure these notes, he executed a first mortgage upon a plantation shown to be worth $25,000.00. The act of mortgage contains the following provision, to-wit:

"In case it becomes necessary to resort to legal proceedings for the recovery of the amount of said notes, or of any part thereof, he, the said Thomas J. Foster, hereby binds and obligates himself to pay the fees of the attorney who may be employed for that purpose, which fees are hereby fixed at ten per cent. on the amount sued for."

The present litigation arose out of a difference of opinion between counsel employed by Mrs. Blake and the administrator of the Foster succession as to the liability of the latter for attorneys' fees under the clause above quoted.

The maker of the notes died within the year following their execution, and Mr. J. Warren Foster was appointed administrator of his succession. The interest upon all the notes was paid by him regularly, in the years 1892, 1893, 1894 and 1895. That it was so paid in 1892 and 1893 is admitted. As to the years 1894 and 1895, counsel for the administrator assert, most positively, that it was paid when due. In their brief, on rehearing, they say: "Such interest, it is admitted, was paid at maturity." Upon the other hand, counsel for the plaintiff say in their brief: "We know of no such admission, and it is not a fact." In this situation, we must rely upon the evidence in the record. It is admitted that, in 1896, the administrator neglected to pay the interest upon the 12th of March, and for several months afterwards, and it appears that Mrs. Blake placed the notes in the hands of her attorneys in July of that year, at which time the interest, which fell due March 12th, was still unpaid. It is claimed by the administrator, that this was the only interest which was then unpaid. It is admitted that this interest, due March 12th, 1896, was paid July 27, 1896. It is also admitted that the interest which fell due March 12th, 1897, was paid at maturity. The testimony of the administrator given in 1898, upon the subject of his payment of interest, is as follows, to-wit:

"A.   The interest has been paid up to March 12th, '97.

"Q.   Has it been paid regularly at the end of each year?

"A.    Yes, sir, with the exception of once, there was a lapse of two
or three months.

"Q.    Has it been the course of your dealing with Mrs. Blake to pay
the interest at the end of each year?

"A.    Yes, sir.

"Q.    On the whole amount of the notes?

"A.    Yes, sir.

"Q.    On those notes which were due as well as those which were not
due?

"A.    Yes, sir."

His cross-examination upon the point was confined to a single ques-
tion, to-wit:

"Q.    Mr. Foster, I understood Mr. Caffery to ask you if you hadn't
paid all the interest due, now did you pay any interest that was not
due?"

"A.    No, sir, all the interest I paid was due."

The only testimony given by the counsel for the plaintiff, himself,.
upon the subject, is as follows:  "Some days before the 22nd of July,
1896, Mrs. Blake handed me the notes now sued on.  The interest had
not been paid at that time.  *  *  *  Mr. Foster proposed to pay the
interest up to the 12th of March, 1896, and asked for a continuance of
the notes.  I insisted upon the indorsement, and Mr. Foster gave a
check or a draft, and it was understood that, when it was paid, I was
to indorse the interest upon the back of the notes, which I did do.
Afterwards, on the twenty-second of February, 1897, I wrote him, and
he sent me a letter  *  *  *  enclosing me a check  *  *  .*  for the
amount of the interest—and we indorsed that payment · upon the
notes."

The indorsements upon the notes are as follows, to-wit:

"Interest for the first year, paid, March 12, 1892.
(Signed)                                        "CECELIA T. BLAKE.
"Interest paid up to date, March 12th, 1893.
(Signed)                                        "CECELIA T. BLAKE.
"Interest paid up to March 12th, 1896. .
"Interest paid up to March 12, '97, and payment extended one·
year; February 27th, 1897.
(Signed)                                        "BEATTIE & BEATTIE."

This is all that we find upon the point at issue.  Under these cir-
cumstances, and as Mr. Foster testifies, positively  and  specifically,.

that the interest was paid regularly every year, except one (referring to year 1896), as he gave this testimony in the presence of the plaintiff's counsel, who did not question its correctness, either by the cross interrogatories propounded, or in the testimony which he, himself, appears to have given as soon as Foster left the stand, we can find no sufficient reason for not accepting it as true.

We repeat, then, that the interest was regularly paid in 1892, 1893, 1894 and 1895. Payment of the principal was, however, never asked, or desired, though the last of the notes matured in 1894, for the reason that the holder was satisfied to hold them as an investment, having bought them originally for that purpose. In March, 1896, as has been stated, the administrator neglected to pay the interest due at that time. Mrs. Blake does not appear to have reminded him of it or to have made any demand, but she put the notes in the hands of Messrs. Beattie & Beattie, her attorneys, who wrote, not to the administrator, but to Dr. Dixie Foster, one of the heirs, as follows:

"THIBODEAUX, July 22nd, 1896."

"Mr. Dixie Foster:

"Dear Sir—There have been placed in our hands for collection three notes, secured by mortgage, and signed by Thomas J. Foster, each of these notes is for $2200. We do not wish to give any trouble about them, and wish to facilitate you as much as we can. We think it best to enter up judgment upon them, but do not, at present, know the exact status of the succession of your father. Will you please let us know what can be done in this matter, and if you be not the proper person to address, let us know to whom we should apply.

Yours truly,

(Signed)                              "BEATTIE & BEATTIE."

This letter was addressed to Dr. Foster, at Franklin, and was, by him, handed over to the administrator, J. W. Foster, at once, and the latter replied the next day, saying:

"Yours of the 22nd inst. addressed to my brother was handed me this morning. I will be over to see you to-morrow, in regard to the matter.

(Signed)                              "J. W. FOSTER."

He accordingly went over to Thibodeaux, not the next day, but on July the 27th; and he testifies as follows, as to what took place:

"I saw Mr. Blake, and asked him wasn't he satisfied with the interest; he said he was, and to come to Judge Beattie's office and we

would see him. We went to Judge Beattie's office, and he asked me to acknowledge the debt, as administrator, and I did so. I then gave him a check or draft, I don't remember which, in payment of the interest on these notes, with which he was perfectly satisfied, and told me that when it was collected, he would credit it on the notes. I then left Thibodeaux. Nothing was said about the principal whatever."

Concerning the "Mr. Blake" thus spoken of, he says:

"Q. You have dealt with Mr. Bannon Blake, as representative of his mother, in making the payment of this interest?

"A. He and Judge Smith, I have dealt with altogether.

"Q. And when you dealt directly with the Blakes, you dealt with Bannon Blake, as the representative of his mother?

"A. Yes, sir.

"Q. And, in dealing with him, he acted as the agent of his mother?

"A. Yes, sir."

On the 22nd or 24th of February, 1897, Messrs. Beattie & Beattie wrote to the administrator: "The interest on notes belonging to Mrs. Blake is due on the 12th of March. If paid, there will be no trouble about a postponement for another year. Please send us the amount, and we will credit it on the notes, as we hold them for her."

The administrator replied on the 25th of February: "Your favor of the 24th at hand, and noted. Enclosed find check for five hundred and twenty-eight dollars, in payment of interest on notes, favor of Mrs. Blake, amounting to $6,600.00. Please credit amount of interest on notes and oblige."

The interest thus paid was credited by an indorsement on the notes, which reads: "Interest paid to March 12th, 1897, and payment extended one year. Feb. 27, '97.

(Signed)    BEATTIE & BEATTIE."

The following year, February 3, 1898, the administrator wrote to Messrs. Beattie & Beattie, proposing to take up one of the notes, to pay the interest on all of them to March 12, 1898, and suggesting that the two remaining notes be extended one year. Messrs. Beattie & Beattie replied February 7, 1898, agreeing to all that was proposed, with a condition which they thus state: "But our attorney's fees will have to be paid, as they have been due for some time. We are disposed to be as lenient as possible, and will not exact any more than the amount due on the note to be cancelled," etc.

There appears to have been some delay between the writing and the receipt of this letter, for the administrator replied by a telegram, dated February 14, 1898: "Can you meet me Tuesday morning at your office? Answer;" and on the following day, February 15th, he went to Thibodeaux and had an interview with Judge Beattie. As that gentleman insisted upon the attorney's fees being paid, the administrator tendered payment of the full amount of the principal and interest of all the notes; that is to say, he made a tender which he intended in that way. This tender was refused on the grounds that it was not made in money; that the amount was insufficient to cover the principal and interest which would be due on March 12th; and that such a tender would, in no case, be accepted unless it included the attorney's fees claimed. The next day, February 16th, the administrator deposited in bank, in Franklin, and ordered it transferred to the bank at Thibodeaux, $7,100.12, and he telegraphed to Messrs. Beattie & Beattie: "Amount due on notes deposited to credit of Mrs. Blake, or yourself, in St. Mary Bank, will be transferred to the Bank of Thibodeaux this evening." To which Messrs. Beattie & Beattie. replied, by letter, February 16th, that the administrator could deposit his money where he pleased, etc., etc.—and saying—"when the notes held by us become due, we shall take legal steps to collect the amount due on them."

Thereafter, on February 18th, Messrs. Beattie & Beattie were notified by the Bank of Thibodeaux that it held $7,100.12 subject to their order, or the order of Mrs. Blake, upon the surender of the notes in question; to which they replied, on the same day, denying that any legal tender of payment of the notes had been made; stating that the notes would not fall due until March 12th, and that the amount would be greater than the amount held by the bank, and, saying further: "besides that, the notes bear ten per cent. attorney's fees clause, and were placed in our hands for collection several years ago, as is well known to Mr. Foster. If he will, or if you will, for him, pay us in full, amount of notes, with interest, to maturity and 10 per cent attorneys' fees, we will hand you the notes, not otherwise.".

It is admitted that, about this time, a tender, legal in all respects, was made of the full amount of the principal of the notes, with interest to maturity; that is to say, that actual tender was dispensed with, but it was agreed that it should be considered as having been made. Later on, in April, Mrs. Blake, through her same attorneys,

appeared in the District Court, in the succession of Foster, and ruled
the administrator to show cause why the property mortgaged should
not be sold to satisfy the notes in question with interest, attorneys'
fees, costs, etc.  To this rule the administrator answered, in substance,
that the notes had been treated as a continuous loan; that the interest
had been paid year after year; that no demand for the payment of the
principal had been made; that he stood ready to make such payment
when called upon; that no legal proceedings for the collection of the
notes was necessary, and, hence, that no attorneys' fees were due.  He
also alleged the tender of the payment of the principal and interest,
and set up a claim for damages in the way of attorneys' fees.

The trial of this rule resulted in a judgment rejecting the plaintiff's
entire demand, and the plaintiff has appealed.  A motion to dismiss
the appeal was, subsequently, filed in this court, and passed on in the
original opinion.

## On Motion to Dismiss.

From the foregoing statement of the pleading and evidence, it
appears that, notwithstanding the admission that the succession owed
the principal and interest of the notes sued on, the entire demand of
the plaintiff in rule was rejected.  This, we have no doubt, was an
error into which our brother of the District Court was led by the man-
ner in which the case was presented—probably by statements and
admissions of counsel to the effect that the amount of the principal
and interest of the notes was at the command of plaintiff in the rule,
and that the only point of dispute was as to the attorneys' fees.  As
the record is presented to us, however, we have no sufficient evidence
that such an amount is at the plaintiff's command.  It is true that it
was tendered to the plaintiff at some time prior to the trial, but that
tender was not repeated at the trial, and *non constat* that the
defendant in rule will repeat it if there is a final judgment, on the
rule, rejecting plaintiff's demand for the sale of the property.  The
consignment, or deposit in bank, is not even set up, nor is a tender
made, in the answer to the rule to sell, and whether the money,
deposited in bank to the order of plaintiff, or her attorneys, was
allowed to remain there, we have no means of knowing.  It is fair to
suppose that if the defendant in rule expected to derive any benefit
from the fact, and the continuance, of the deposit, it would have been

set up as a defense, and evidence would have been offered to show that
the money had really been consigned and was still in bank subject to
the order of the holder of the notes. In the absence of such averment
and proof, she has been thrown out of court, with nothing that seems
to be at all certain, although her claim is admitted, as to the principal
and interest, and entitles her to either payment or judgment. The
authorities to which we have been referred, upon the subject of juris-
diction, are inapplicable to such a condition. If, say, $7,000.00,
representing the principal and interest of the notes sued on, had been
tendered in court, upon the trial of the rule, and had been accepted by
the plaintiff, there would have been nothing left in dispute except the
attorney's fees. The authorities sustain that proposition, and some of
them go a little farther. But there was no such amount tendered or
accepted, and the plaintiff has neither money nor judgment—whereas
she is certainly entitled to one or the other. A brief resume of the
authorities, to which we have been referred, will show their inappplic-
ability:

Zacherie vs. Lyons, Administrator, 22 Ann., 218.

Defendant was sued for $1,449.59. He admitted owing, and he
deposited in court $1,041.00, which the plaintiff withdrew. Held:
That the amount in dispute, after such withdrawal, was less than
$500.00.

Girardey vs. Oily, 26th Ann., 291.

Defendant was sued for $1000.00 and admitted an indebtedness of
$725. There was judgment for the whole amount claimed and the
defendant appealed. Held that there was only $275 left in dispute.

Stubbs vs. McGuire, 33 Ann., 1069.

Execution was issued on a judgment for $1,029.84, and certain
property was seized. The seizure was enjoined on the ground that the
writ should have been credited with $196.95, which had been paid, and
upon other grounds, unnecessary to mention. The payment of the
$496.95 was admitted, and it was held that the only amount left in
dispute was the difference between the amount with which it was thus
admitted that the writ should have been credited, and the amount for
which the writ had issued.

Even in Denegre vs. Moran, 35th Ann., 346, we infer that the
plaintiff had judgment for at least the amount admitted to be due,
whilst in Blache vs. Aleix, 15th Ann., 50, an admission, coupled with a
deposit in court, which was not withdrawn, and where there was no

partial judgment entered, it was held, did not curtail the claim of its original proportions. "That," the court said, "was only accomplished by the final judgment," which was the subject of the appeal sought to be dismissed.

Our ruling heretofore made, upon the motion to dismiss, will, therefore, remain undisturbed.

## ON THE MERITS.

## I.

The contracting parties were at liberty to agree that attorney's fees should be paid in the particular case for which, as a matter of fact, provision has been made, or they might have agreed that they should be paid where the contingency was more imminent, or more remote. Thus, instead of agreeing that the maker of the notes should pay such fees "in case it becomes necessary to resort to legal proceedings for the recovery of the amount of said notes, or any part thereof—which fees are hereby fixed at ten per cent. on the amount sued for," as their contract reads, they might have imposed such liability on the maker of the notes, in the event of their non-payment at maturity—with, or without, previous demand and refusal or neglect to pay; or, in the event that the mortgaged property should realize a sufficient amount over and above the amount of the notes and interest; or, they might have been entirely silent upon the subject. In other words, there was a wide field into which they were at liberty to enter, and there make their choice among many conditions; and all languages, living and dead, might have been utilized for the expression of the consensus at which they arrived. As such a provision would, however, in any case, be regarded as in the nature of a stipulation for a penalty, the burden would rest upon the party seeking to enforce it to establish clearly, and affirmatively, the existence of the conditions required for such enforcement. And, for the purpose of determining what those conditions were, a court of justice would, necessarily, presume that the language used was selected intelligently by the contracting parties, in order to define the conditions agreed upon, and differentiate them from other conditions which might have been agreed upon.

If the litigants before this court had, themselves, left the word "necessary" out of their contract, and had merely agreed that the fees

should be paid "in case of resort to legal proceedings," the probabilities are that, even in that case, the mortgagee would not have been allowed to recover upon the basis of "legal proceedings," wholly unnecessary, or based upon a necessity entirely of her own making. The word "necessary" was not, however, left out by the parties themselves, but may, under the circumstances, be regarded as having been used, *ex abundante cautila,* and in order to emphasize the idea conveyed by it. We are not, then, at liberty to eliminate it; and to hold that the maker of the notes should be made liable in case of legal proceedings whether "necessary" or not.

Pretermitting, then, the consideration of the question, whether there were any legal proceedings of the character otherwise contemplated by the contract, the first inquiry is; were any legal proceedings necessary?

The evidence shows that the notes for $6,600.00, bearing interest at the rate of eight per cent. per annum, were secured by first mortgage upon property worth $25,000.00, and that the holder had taken them originally as an investment, and was willing to hold them as such. And, it must be admitted, that a better investment could hardly be found.

The first note fell due on March 12th, 1892, and upon that day the interest for the year, upon all the notes, was duly paid, but it does not appear that anything was said about the payment of the principal of the note which was then due. The second note fell due March 12th, 1893, and upon that day the interest for the year upon all the notes was paid, but there was no demand for the payment of the principal of the two notes which were then due: The third note fell due March 12th, 1894, and the interest upon all the notes was paid, but, though they were all now due, there was still no evidence of a desire on the part of the holder that they should be paid. She was content to hold them as an investment, and receive her annual income in the way of interest. The same condition existed, when, in 1895, the interest was again paid. When the 12th of March, 1896, came around, the administrator appears to have forgotten, or to have neglected, to pay the annual interest. It is not alleged, or shown, that the holder of the notes reminded him of his failure, or made any demand upon him, but, somewhat later, she placed the notes in the hands of Messrs. Beattie & Beattie, her attorneys, not that she wanted them paid, if they were still safe as an investment, but, no doubt, because the

interest due March 12th, 1896, had not been paid, and she probably wanted the matter inquired into, and steps taken, if necessary, to protect her rights. Messrs. Beattie & Beattie addressed a communication, not to the administrator, but to his brother. It, however, reached the administrator without delay—and he responded without delay—first, by letter, and then by going to Thibodeaux, in order to comply with the only request which was made, to-wit: "Will you please let us know what can be done in the matter?"

The whole evidence in the record, taken together, justifies the belief that he went prepared to say to the holder of the notes, or to her attorneys, "I am ready, on behalf of the succession of Thomas J. Foster, to pay the interest now due, or past due, on the notes held by you, with the understanding that the notes are to be extended, or to run on as they have been allowed to do for the past several years; or, if you insist upon, or desire it, I will pay them, principal and interest." As it happened, he first met the son and personal representative of the holder of the notes, who had, before that, acted as her agent in the matter of receiving the interest and extending the time of payment, and was at once told by him that his mother would, as usual, be satisfied with the payment of the interest. They then went, together, to the office of Messrs. Beattie & Beattie, and but one additional suggestion appears to have been made by those gentlemen, *i. e.*, that the administrator should indorse an acknowledgment of the debt upon the backs of the notes, which was done without hesitation. The interest was then paid and it was understood, tacitly or otherwise, that the notes should be allowed to run on another year, from March, 12th, 1896. Mr. Foster says that nothing whatever was said about the payment of the notes. Judge Beattie says that it was agreed that they were extended. It is immaterial as to this. No demand or request, as to the payment of the notes was made, and no condition was suggested as a consideration for extending the time of payment, except the payment of the interest then due and the acknowledgment, by the administrator, of the validity of the debt. Now, certainly, there had been nothing which could be called a legal proceeding up to the time that the administrator met Mr. Blake and understood from him that Mrs. Blake wanted only the interest. The letter written by Messrs. Beattie & Beattie, which brought the administrator to Thibodeaux, had not been written to him, or to anyone representing the succession and was not, therefore, a demand upon him, or upon the succession.

He came, then, before a demand of any kind was made upon him, for the purpose of doing whatever the holder of the notes required, or wanted, with reference to them, in order, as we think, that the heirs of Thomas J. Foster might be saved the annoyance and expense of legal proceedings.

He did all that was asked, or wanted; that is, he paid the past due interest, acknowledged the notes, and with the understanding, tacit or expressed, that the time of payment had been extended, as usual, he went back home in the belief that he had accomplished the object of his mission. No demand for the payment of the notes was made, and nothing was said about attorney's fees. If, then, it be true that the obtention of the administrator's acknowledgment, an acknowledgment given, as we think, for the purpose of avoiding legal proceedings, and in the belief that no legal proceedings would be taken, was regarded by the plaintiff's counsel as being, in itself, a legal proceeding, we think that it would have been only fair that the administrator should have been so informed before he signed it; since he had voluntarily gone from Franklin to Thibodeaux to make a settlement such as would relieve the holder of the notes of the necessity of resorting to such proceedings. The following year, in February, 1897, Messrs. Beattie & Beattie wrote to the administrator reminding him that the annual interest would fall due on March 12th, and, so far from demanding payment of the principal of the notes, volunteered to extend them for another year upon payment of such interest.

To this the administrator replied, fifteen days before the interest fell due, enclosing a check for the same, and accepting the offer to extend the time of payment of the principal; nothing was said about attorney's fees. The next year, in February, 1898, the administrator wrote proposing that he should pay one of the notes, principal and interest, and should pay the interest upon the other two, and that these latter should be extended for another year, and the question of attorney's fees was mentioned, for the first time, in the answer to this letter. Messrs. Beattie & Beattie wrote that they, for their client, would agree to all that was suggested, provided their fees, of ten per cent. on the amount of the note to be paid, was included in the payment. To this the administrator replied, by telegraph, that he would, at once, go to Thibodeaux to see the writers of this letter. He did go to Thibodeaux without delay, and when he found that Messrs. Beattie & Beattie insisted upon their demand for fees, he tendered the full

amount of the principal of all the notes, with interest to March 12th, 1898. He also deposited the amount in the bank in Thibodeaux, subject to the order of the holder of the notes, or her attorney, and had the latter duly notified of the deposit. Both tender and deposit were declined, and a rule was taken to sell the property to pay the notes, with interest, attorney's fees, and costs.

The question then recurs; where was the necessity for any legal proceeding at all?

The burden of proof rests upon the plaintiff. From the evidence adduced, it does not appear that there was any necessity for the obtention of the administrator's acknowledgment in July, 1896. The notes had been extended from year to year, by tacit or express agreement. There was no demand then made for their payment, and, as a matter of fact, it may be said that the holder did not want them paid, but was perfectly willing to extend them on payment of interest. Beyond this, the evidence justifies the belief that if there had been any intimation that payment was expected or desired, the administrator would have done, at that time, what he did later, when called upon to pay $220.00 of attorneys' fees; i. e., he would have made a tender of the whole amount of the debt. If, then, the obtention of the acknowledgment should be regarded as a legal proceeding within the meaning of the contract, it was still lacking in the essential that it was not "necessary;" for, the payment, which was not wanted, could, if wanted, have been obtained without it.

The filing of the rule to sell, after the whole amount due had been tendered and refused, was a necessity of the plaintiff's own making, and, whatever may be her rights in the premises, was not a necessary legal proceeding within the meaning of the attorney's fee clause in the contract, which means a necessity resulting from some default on the part of the maker of the notes, or arising from conditions for which, as between him and the holder, he is responsible. Our conclusion upon this branch of the subject, which did not particularly attract attention upon the former hearing, then, is; that the strong language used in the contract precludes the idea of a resort to legal proceedings, such as would entitle the holder of the notes to attorney's fees, except in case of necessity; that the burden rests upon the plaintiff, seeking to recover, upon the ground that she has resorted to legal proceedings, to show that there was a necessity for so doing; that such necessity could be shown only by evidence that, at least, a

reasonable effort had been made to obtain payment in some other way, or that any such effort would have been impracticable or useless; and that, as it not only appears that the debtor was unaware that the plaintiff wanted the debt paid, but had reason to believe that she did not, and, as a matter of fact, that she did not want it paid, and never made any request to that effect, but consented that the time of payment should be extended, it can not be said that a resort to legal proceedings for the recovery of the debt, or any part of it, is shown to have been necessary.

## II.

Still assuming, for the purposes of the argument, that the obtention of the administrator's acknowledgment was a legal proceeding, it was not, under the circumstances of the case as presented, a legal proceeding resorted to for the recovery of the debt. The purpose which the plaintiff had in view was not the recovery of the debt, but the obtention of additional assurance of the security of her investment. It might, with as much propriety, be said that the act of mortgage and confession of judgment in favor of the holder of the notes was a legal proceeding resorted to her by her (at the time of their receipt) for the recovery of the amount represented by such notes. But it is plain that the confession of judgment and the act of mortgage were not resorted to for the recovery of the debt, for there was no debt due when they were executed. They were resorted to at that time for the purpose of securing a loan which the plaintiff was desirous, or willing, to make, as an investment of her money. If, when the loan fell due, it was not paid, she might then resort to the confession of judgment and mortgage to enforce its payment. And so, it may be said, with regard to the acknowledgment of the administrator. It may, or it might, at some time, be resorted to, as a basis of recovery, but at the time it was obtained, it was rather, as we think, intended to place upon a surer footing a debt which the plaintiff was not seeking to recover, but to extend, or renew, as an investment.

## III.

Still further considering the acknowledgment obtained by the plaintiff's attorneys, and with a view to determining whether its obtention was a "legal proceeding" within the meaning of the contract sued on, our attention is attracted to the concluding language in the provision bearing upon the subject. To quote that provision again:

The maker of the notes is to pay attorney fees "in case it becomes necessary to resort to legal proceedings for the recovery of the amount of said notes or any part thereof, which fees are hereby fixed at ten per cent. of the amount sued for."

It can not be claimed that any suit was brought before the filing of the rule to sell; and that rule was filed, not because of any difficulty in recovering "the amount of said notes, or any part thereof," but because of a refusal to pay ten per cent as attorney's fees, when, by the terms of the contract, the amount of those fees was to be determined by the amount sued for. Plainly, if no suit was brought, there was no way of fixing the amount of the fees. And if it was unnecessary to bring the suit for the recovery of "the amount of said notes or any part thereof," there was no warrant for bringing it at all.

## IV.

The rule eventually taken by the plaintiff for the sale of the mortgaged property, must be considered in connection with the fact that it is distinctly admitted that, before it was taken, the administrator had made a legal tender of the full amount of the debt, the attorney's fees not being included.

In *Simonds vs. Sheriff, et als.,* 46 Ann., 473, the language of the act of mortgage, upon the subject of attorney's fees, was identical with that used in the present case. The holder of the notes, however, instituted suit, *via. executiva,* for the recovery of the debt, and the mortgagor enjoined. There was no question but that the proceeding had been resorted to for the recovery of the debt; there was no doubt that it was a *suit,* and, hence, established the basis contemplated by the contract for the fixing of fees. The evidence did not establish that the holder of the notes had taken and held them as an investment, and that the maker was led to understand that the payment of the principal would be extended upon the payment, annually, of the interest. The debtor made no legal tender of payment before the bringing of the suit; and this court said, in reference to said debtor:

"At the same time, we think it clear that he was not liable or "responsible for these fees previous to the institution of legal pro- "ceedings, and that he could have discharged himself from their pay- "ment by making a seasonable legal tender, in conformity to the pro- "visions of Article 407, Code of Practice."

In the instant case, the debtor made the "seasonable legal tender,"

;referred to, of the principal and interest of the notes, at a time when, for the reasons which have been given, the attorney's fees constituted no part of the debt.

In *Ziegler vs. His Creditors,* 49 A., 144, the syllabus reads: "At "torneys' fees stipulated in a mortgage, to be paid in case of non-"payment of the debt at maturity, are due when the mortgagee is "bound to employ counsel to collect the mortgage, and such counsel "represent him in the succession proceedings." In the opinion, it is said (p. 158); "The judgment of the Civil District Court, allowing "Mrs. M. F. Smith attorney's fees is correct. Her claim was not paid "as it should have been, and the result of its non-payment was to "bring about a condition of affairs which made the employment of "counsel necessary for the protection of the creditor's rights."

We have been unable to find, in the opinion upon the rehearing, the expression of views to which plaintiff's counsel refer in their brief.

Plaintiff can not, therefore, be considered as entitled to the attorney's fees by reason of the taking of the rule.

## V.

The remaining question is—what are the plaintiff's rights, aside from the question of attorney's fees?

The first attempt to make a tender of payment was abortive. This was followed by the deposit in bank. After the deposit, the admission was made that the administrator would be considered as having made a full legal tender; this being done to save the trouble of obtaining money, and observing formalities. Whether the money deposited in bank had been allowed to remain there and continued to remain there up to the date of, and after, this admission, and whether it is there now, or in the possession of the defendant, does not appear. To have relieved the succession of further risk and expense, the administrator should have either alleged in his answer to the rule, and proved, that the money was still deposited in bank subject to the plaintiff's order, or else, he should have renewed his tender, as a defense to the rule, and should have followed it up by depositing the money, either in court or in bank, for the plaintiff to take if she chose.

As the matter stands, whilst the tender, as made, rendered legal proceedings unnecessary, it did not discharge the debt, and whilst the

refusal of the plaintiff to accept the tender deprived her of the right to attorney fees, it did not operate to prevent her from demanding payment of the notes and mortgage.

The argument of counsel, taken in connection with the judgment of the court *a qua,* leads us to believe that it was an understood thing that the plaintiff could, at any time, get the amount of the notes and interest, if she had been willing to accept the same, and that the whole purpose of the litigation has been to determine the question of her right to recover attorney's fees. That question has now been settled, so far as concerns the present status, and any delay on the part of the defendant in placing the amount of the principal and interest of the notes within the reach and control of the holder would make necessary legal proceedings such as would entitle her, the holder, to the attorney's fees which are now denied.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and that there now be judgment in favor of the plaintiff in rule directing the defendant, J. Warren Foster, administrator, to cause the lands described in said rule, to be advertised and sold, according to law, to satisfy the plaintiff's claim, amounting to $6600.00, with interest thereon at the rate of 8% per annum from March 12th, 1897, until paid, and 10% upon the aggregate amount of said principal and interest as attorney's fees, together with the costs of these proceedings in both courts, provided, however, that if, before this judgment, becomes executory, the succession of Thomas J. Foster shall tender to said plaintiff, and consign, in the event of refusal to accept the tender, the full amount of the said $6600.00, interest, and costs, then and in that event, such tender and consignment shall be held to discharge said succession of all further liability in the premises.