On rehearing.
Statement of Case.
NICHOLLS, X
On the 22d of December, 1900, Frankel and Kaplan sold to Elmus Red- *517 man and Allen Bakestraw, a farm near the town of Crowley, In the parish of Acadia. The purchasers executed their notes to represent part of the purchase price. Among the notes were two for $2,000 each, due on or before December 22, 1902, two for $2,000 each, due on or before December 22, 1903. The notes were payable at the office of the bank of Acadia, town of Crowley.
The notes stipulated 8 per cent, interest from date and payable annually and 10 per cent, attorney’s fees on amount sued for in case of suit. Payment of the unpaid portion of the price was secured by mortgage on the property sold. The act contained the clause “de non alienando.” Later Redman and Rakestraw sold the farm to Thomas L. Shaw who assumed the payment of the four notes but in the act of sale the vendors declared that the interest on the notes had been reduced from S to 6% per cent, payable annually.
Robert H. Woodstock, as holder of the four notes resorted to executory proceedings thereon claiming the principal $8,000, 8 per cent, interest thereon from December 22, 1901, and 10 per cent, attorney’s fees on the aggregate. The proceedings were directed against Red-man and Rakestraw ignoring Shaw.
Redman and Rakestraw and Thomas Shaw, their vendee brought suit enjoining the sale of the property. They alleged that Woodcock claimed more than was due; that Woodcock & Oo., of which firm Robert H. Woodcock was a member, acquired the notes from Frankel & Kaplan in February, 1901; that in March, 1901, the makers entered into an agreement with Woodcock & Oo. by which the interest on the notes was to be reduced from 8 to 6y2 per cent.; that at the maturity of the notes they made tender of the principal and interest thereof, and they contended that by said tenders the running of all interest was stopped after the tender. They denied liability for attorney’s fees.
The prayer of their petition was that the preliminary injunction which had issued in their favor should be perpetuated; that there be judgment in their favor recognizing and enforcing the tenders (which in their petition they alleged they had made) of the payment of the notes and compelling Woodcock to accept the amounts which they alleged were alone due by themselves in full payment and satisfaction of the notes, and ordering that the notes be returned to them upon payment by them of the notes.
Woodcock, the defendant in injunction, pleaded a general denial. He averred that he was the lawful owner of the notes ever since the 1st of March, 1901, or thereabouts; he specially denied that they were ever owned by R. H. Woodcock & Oo. He claimed in re-convention damages against the plaintiffs in injunction. The district court perpetuated the injunction as prayed for. It further ordered and decreed that the tender made at the First National Bank of Crowley, La., on the 22d day of December, 1902, by Thomas Shaw for the benefit of himself and of his coplaintiffs in injunction, Elmus Redman and Allen Rakestraw, of $4,568 in payment of the two promissory notes of $2,000 each, due that day, together with the interest thereon at the rate of 6% per cent, from the 22d of December, 1901, as well as the interest at 6% per cent, per annum due on the other two notes of $2,000 each up to December 22, 1902, and also that the tender at the bank of Acadia on the 26th of December, 1903, by the said Thomas Shaw, likewise for the benefit of himself and of his coplaintiffs’ of $4,-265 in payment of the amount of the two promissory notes due December 22, 1903, together with the interest thereon at the rate of 6y2 per cent, per annum from December 22, 1902, be recognized as legal and binding, and that the seizing creditor be ordered to accept the said amounts in full of the said four promissory notes in principal and the in *519 terest thereon at the rate of 6% per cent, per annum as aforesaid. It further ordered, adjudged, and decreed that the rate of interest on the said notes was 6%. instead of 8 per cent, as shown by the evidence and the finding of the court.
Woodcock appealed.
Opinion.
The notes upon which the executory process issued on the petition of Woodcock were payable at the Bank of Acadia and bore interest on their face at the rate of 8 per cent, from date.
The onus touching the agreement alleged to have been made subsequent to their execution by which it was agreed between the holder of the notes and the makers that the interest fixed therein was reduced to 6V2 per cent, was upon the makers, both as to the existence of the agreement and its terms, and the burden was also upon them to show the legal existence of a legal tender of payment of the notes.
The holder concedes that he agreed to a reduction of the rate of interest, but he insists that the agreement to that effect was conditional — the condition being that the notes and interest should be promptly paid on or before the maturity of the notes at the counting house of Woodcock & Co. at Macon, Ill.
Shaw, who purchased the property after-wards from Redman & Rakestraw, does not pretend to know anything personally of the terms of the agreement. In the sale to him his vendors declared that the interest was reduced to 6% per cent per annum.
The evidence' adduced on the trial is very conflicting.
The main reliance of the plaintiffs in injunction is a typewritten letter bearing the date of March 11, 1901, signed in typewriting, “Woodcock & Co.,” and addressed to Red-man & Rakestraw, in which occurs the following :
“Another thing — the party who proposed to take these notes has become a little shaky since Dr. Walston published his ‘views on the rice country’ and thinks the lien is too great for the amount of the security. We will take the loan ourselves at the same rate we spoke of — that is 6% if the interest is paid promptly as specified in the notes and the principal paid when due. The note inclosed should be file'd with the county clerk as soon as you get it.”
The makers insist that this letter is the agreement or contract which was entered into between the parties — that it is silent as to any condition that the reduction of the rate of interest was made contingent or dependent upon the payment of the notes and interest at the counting .house of R. H. Woodcock & Co., at Macon, Ill., on or before the maturity of the notes; they maintain that the letter discloses the entire contract or agreement. Woodcock points to the date of the letter as establishing conclusively that these pretentions are without foundation inasmuch as at that time he was, and had been for some time, the owner of the notes by consummated purchase from, Frankel and Kaplan, the notes, themselves having reached him from Louisiana on the 11th of March, being sent to him as owner by Mr. Duson. He says in his testimony he has no recollection of having written the letter, but if he did the extract simply referred to the prior verbal agreement which had been closed between the parties so that it did not cover the entire agreement but shows only some of its terms; that it is at furthest an admission or statement which, if too broad or too narrow or erroneous, was open to explanation or proof as held in Flash, Preston & Co. v. American Glucose Co., 38 La. Ann. 7,. and Davies v. Bierce, 114 La. 674, 38 South. 488. We think the letter of the 11th of March was a statement made nunc pro tunc by Woodcock after the agreement as to reduction of interest had been completed of what occurred at Crowley; that it did not cover the whole agreement but referred to only part of its terms and that it was *521 opea to explanation by parol evidence. Woodcock places stress upon tbe affidavit made by Redman as to the actual facts of the case and the testimony of Harold Woodcock as to the statements made by Rake-straw on the same subject.
We have reached the conclusion after fuller consideration of the entire evidence that the agreement to reduce the interest was conditioned upon payment promptly of the principal and interest of the notes at the counting house of R. H. Woodcock & Co., on or before the maturity of the notes.
Assuming that our conclusions on that subject were erroneous, the notes, under such circumstances, would still have been payable at the Bank of Acadia, as declared on their face and under the terms of the agreement, the reduction of interest would result only from payment made there on or before the maturity of the notes.
It is not claimed that payment of the notes due on December 22, 1902, and interest on the other notes was attempted to be made or was tendered at that time at the Bank of Acadia. Shaw, the person who bought the property from Redman ■ & Rakestraw went on the 22d December, 1902, and later on the 26th, to the First National Bank at Crowley, only to make payment of the two notes which matured December 22, 1902, and the interest thereon at the rate of 6% per cent., but the notes were not in the bank. At the suggestion of the cashier, Shaw deposited in his own name in the bank the money which he had, and the cashier wrote to Woodcock, at Macon, notifying him that a deposit had been made to pay the two notes and interest, and asking him (Woodcock) to forward the notes for collection. He did not state the amount deposited nor by whom the deposit was made. In compliance with this request Woodcock forwarded the notes to the bank with a letter of advice, together with a memorandum in which the amount of the notes with interest at 8 per cent, were computed and the bank authorized to receive payment on that basis. Not being authorized to make payment at that rate oí interest, the payment could not be made and the notes were returned to Woodcock on a telegram received from him to that effect
It is urged that by forwarding the notes for collection to the First National Bank, Woodcock waived the right to have payment or tender made at the Bank of Acadia, but we do not think that he did. Waiver is a matter of intention and in the consideration of what was done, the fact cannot be disregarded that payment of the notes was exacted and collection ordered to be made of the notes with interest at 8 per cent., if that amount was offered. If payment should be so offered to be made it was immaterial to Woodcock whether this should be at the First National Bank, or elsewhere, and Woodcock under such circumstances was willing to accept the payment, but if not so offered to be ■ made and made, he was not, nor could be, compelled to do so. He had the right to fall back on his actually existing right of having payment tendered at the Bank of Acadia. If Shaw thought that Woodcock’s demand of payment at the rate of 8 per cent, was unwarranted, he had the unquestionable right to refuse making such payment but this right of refusal was not thereby broadened so as to confer upon him the right of tendering payment at the First National Bank. It was his duty to tender payment at once at the Bank of Acadia where the notes on their face were made payable. Woodcock had neither said nor done anything which did or could have warranted Shaw in seeking to make payment or offering to make payment at the First National Bank. His course was purely voluntary in that respect. When Shaw made the deposit in the First National Bank he authorized the cashier to *523 apply the money, without the necessity of his drawing his own check against it, to the payment of the notes, but after the return of the notes to Woodcock he failed to keep the deposit intact, but has reduced it very materially by checks drawn against it
On December 22, 1903, Shaw, accompanied by Hr. Bone and Mr. Story, presented himself at the Bank of Acadia and offered to pay the two notes which were due on that day, but the Cashier refused to receive the payment. Shaw had at that time in his possession the sum of $4,255, but what kind of money he had with him at that time, does not appear. No reason seems to have been assigned by the cashier for not receiving payment. All of the notes then due were at that time in the possession of the bank for collection.
In the Matter of the Succession of Foster, 51 La. Ann. 1678, 26 South. 568, it was “admitted” that a tender legal in all respects was made of the full amount of the principal of the notes with interest to maturity; that is to say that actual tender was dispensed with, but it was agreed that “it should be considered as having been made.” The only point on which the tender was contested was that the amount tendered did not cover the attorney’s fees demanded.
In this case there has been no admission whatever made as to the validity of any tender attempted to be made — the validity of the tender in. every respect comes to us as a matter to be established by the debtors. We do not think that the legal tenders claimed have been established, nor that Woodcock has waived any of his rights in respect thereof.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment heretofore rendered herein by this court, be annulled, avoided, and reversed, and set aside, and it is now ordered, adjudged, and decreed that the judgment of the district court appealed from be, and it is, hereby annulled, avoided, and reversed, and it is further ordered, adjudged, and decreed that the injunction which issued herein in the district court be dissolved and set aside and the petition of the plaintiff in injunction be dismissed with costs in both courts; that the sheriff of the parish of Acadia be authorized and directed to proceed to the enforcement of the order of seizure and sale directed to him by the district court. It is further ordered that the right of the defendant, if any he has, to damages resulting from the injunction be and it is hereby reserved.
BREAUX, O. J.,' dissents.