324 So.2d 11 (1975)
Stuart H. BURRIS
v.
William T. GAY, Jr. and Sandra Querbes Gay.
No. 12755.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1975.
Rehearing Denied January 6, 1976.
Writ Refused February 13, 1976.
*12 Booth, Lockard, Jack, Pleasant & Lesage by Troy E. Bain, Shreveport, for defendants-appellants.
Cady & Beard by William M. Cady, III, Shreveport, for plaintiff-appellee.
Before HALL, MARVIN and HEARD, JJ.
En Banc. Rehearing Denied January 6, 1976.
MARVIN, Judge.
Defendants, Mr. and Mrs. Gay, vendees and debtors under a vendor's lien-promissory note, appeal from a money judgment below equal to the amount stipulated in the lien and note as attorney's fees. We affirm the trial court.
The note and vendor's lien were executed on May 28, 1973, for $44,500.00, payable in monthly installments of $358.50, beginning June 1, 1973. As required by the credit deed in which the vendor's lien was retained, hazard insurance on the improvements was obtained by the vendees.
Seventeen monthly installment payments were made on the note, each of which was paid approximately two weeks after it became due. The plaintiff-vendor pledged the note for a bank loan on which vendor's installment payment to the bank became due on the 15th of each month. Plaintiffvendor, with some regularity, contacted or attempted to contact the husband-vendee when the payments on the note were not made by the 15th of the month. Plaintiff's last, but unsuccessful attempt to contact the husband-vendee about a late payment was in August, 1974, when the monthly payment was not received by plaintiff until August 28, 1974.
The insurance policy on the improvements on the property was written for a three-year term beginning June 29, 1973. Premiums were payable annually. During the time before this suit arose, the property insurer paid some $190.00 for damage to the roof of the home on the property covered by the policy. Before Mr. Gay cashed the check for this loss, he sought and obtained the vendor's approval to do so as the vendor's interest as "Lienholder" was indicated on the policy of insurance and apparently, we infer, on the check.
The monthly installment on the note for December, 1974, was not paid until about December 18. About that time or perhaps the next day, the vendor received from the property insurer a copy of a notice of cancellation of the insurance, addressed to Mr. Gay, and indicating the vendor by name and address, as lienholder, for purposes of a "notice copy." The cancellation was to be effective December 29, 1974, because of nonpayment of the premium due on June 24, 1974. The next monthly installment had not been paid by January 22, 1975. About that time, or a day or so later, the vendor turned the note over to his attorney to file suit.[1]
On January 24, 1975, an order of seizure and sale issued on a petition for executory process filed on that date by vendor. An attempt was made by Mr. and Mrs. Gay to pay the January installment shortly after the time suit was filed, but this was refused by vendor and his attorney. A written offer was made to pay the total amount due, except attorney's fees, on February 13, 1975, by defendants' attorney.
On April 1, 1975, the vendees petitioned to enjoin, and obtained a temporary restraining order against, the executory process. Other pleadings and exceptionsnow mootwere filed. Eventually, by stipulation and agreement, payment of the principal and interest was made by vendees to vendor, rescinding the order of seizure and sale and transforming the case into an ordinary proceeding. It was stipulated that the "issues" of the case would not be changed. The crux of the lawsuit thus remaining, is whether or not vendees are liable *13 for attorney's fees as provided in the note and credit deed.
The credit deed in pertinent part reads as follows:
"In the event of failure to pay any of. . . said installments when due,. . . or failure to keep said buildings insured, then, and in that event, each and all notes shall immediately become due and collectible at the option of the holder.

"And in order to secure the payment of said note _____, interest, costs and attorney's fees, a special mortgage and vendor's privilege is hereby stipulated on said property in favor of said vendor, or any future holder of said note ____, said purchaser ____ agreeing not to alienate, deteriorate or encumber said property to the prejudice of this mortgage.
"In event of suit for collection of said note or any other amount which may be due under this contract, or when said claims are placed in the hands of an attorney for collection, such purchaser agrees to pay the fees of such attorney at law who may be employed for that purpose, which fees are hereby fixed at ten per cent (10%) on the amount to be collected; . . ."
Similar language is contained in the note:
"FOR VALUE RECEIVED I promise to pay to the order of FUTURE HOLDER FORTY-FOUR THOUSAND FIVE HUNDRED AND NO/100 ($44,500.00) _____ DOLLARS With ... interest from date until paid and all attorney's fees incurred in the collection of this note, or any portion thereof including interest, which fees are hereby fixed at 10 per cent on the amount to be collected. Principal and interest payable as follows:

* * * * * *
"Failure to pay any installment when due, or failure to pay taxes before delinquent, or failure to keep the property insured shall, at the option of the holder hereof, mature the entire unpaid balance, which shall then become immediately due and exigible."
The note also contains this provision:
"The makers, endorsers, guarantors, and sureties of this note hereby severally waive presentment for payment, demand, notice of non-payment and protest, all pleas of division or discussion, and consent that time of payment may be extended without notice thereof." (Emphasis supplied).
In the petition for executory process, plaintiff alleged the defendants' failure to pay when due the January, 1975, installment, the failure of defendants to keep the property insured and the failure of defendants to prevent gross deterioration of the improvements on the property, as grounds for maturing the note in its entirety.
Defendants contend that plaintiff, "by waiver and estoppel" had lost his right to accelerate the amount due by reason of his repeated acceptance of late payments. Defendants denied their failure to maintain the insurance and denied the allegations regarding deterioration of the property. The record establishes defendants' failure to maintain the insurance. The servicing agent of the insurer testified to this and the notice sent to plaintiff as lienholder and to Mr. Gay as property owner on December 17, 1974, is in the record. Defendants admit the fact of the lateness of payments made on the note, but contend estoppel, waiver, and that by continually accepting late payments, the plaintiff could not successfully claim attorney's fees without expressly notifying defendants of his intention that they strictly comply with the contract in the future. In effect, defendants contend a putting in default is necessary before plaintiff is entitled to attorney's *14 fees. Defendants rely primarily on Guttuso[2] and St. Charles Dairy.[3]
In Guttuso, Judge Lemmon, as the organ of the court, discussed a debtor's liability for attorney fees based upon habitually late payments despite the creditor's acceptance thereof, holding:
"[W]hen the obligor, by reason of previous conduct of the obligee, is justified in believing that absolute punctuality of performance is not expected of him and will not be insisted upon, the obligee cannot exact a penalty for delay or delinquency without first providing adequate notice of his intention to require strict compliance in the future." 270 So.2d 326, 327.
If the failure to pay installments timelywere the only basis upon which to mature the unpaid balance of the note in the instant case, then we might find Guttuso perhaps more persuasive. See also Rex Credit Co. v. Kirsch, 4 So.2d 797 (Orl.App. 1941); Emblem, Inc. v. Picolo, 123 So.2d 799 (La.App. 4th Cir. 1960). Mere acquiescence, or forebearance, however, does not create estoppel, particularly when, as here, the obligee periodically complained or attempted to complain to the husband-obligor about the payments being late.
The effect of St. Charles Dairy is discussed in Maurin v. Adam Lumber Co., 140 So.2d 804 (La.App. 4th Cir. 1962). There the court said:
"Our attention is directed to St. Charles Dairy, Inc. v. Hayes, Jr., 233 La. 217, 96 So.2d 494, in which the Supreme Court, referring to Succession of Foster, 51 La.Ann. 1670, 26 So. 568, said that, where the holder of a note attempts to enforce such a provision for an attorney's fee, `the burden rests upon the plaintiff, seeking to recover, * * * to show that there was a necessity for so doing * * *.' However, a reading of the decision in Succession of Foster, supra, indicates that that was so held only because the note itself provided that the attorney's fee would be due only if it appeared that there was `necessity' for employing the attorneys. The Court discussed the wording of such clauses and said:
"`The contracting parties were at liberty to agree that attorney's fees should be paid in the particular case for which, as a matter of fact, provision has been made, or they might have agreed that they should be paid where the contingency was more imminent or more remote. Thus, instead of agreeing that the maker of the notes should pay such fees "in case it becomes necessary to resort to legal proceedings for the recovery of the amount of said notes, or any part thereof, which fees are hereby fixed at ten per cent. on the amount sued for," as their contract reads, they might have imposed such liability on the maker of the notes in the event of their nonpayment at maturity, with or without previous demand and refusal or neglect to pay * * *.'
"In other words, what the Supreme Court said in Succession of Foster and approved in St. Charles Dairy, Inc. v. Hayes, Jr., was that if a note requires a showing of necessity for the employment of attorneys, before the fees may be claimed, the plaintiff must show that amicable demand had produced no results and that, therefore, there was necessity, but that if such a note merely provides that the fees would be due `in event of * * * nonpayment at maturity,' then all that would be necessary would be to show nonpayment. The note in the case before us does not require that necessity be shown, but provides only that the attorney's fees will be due `in the event this note is not paid at its maturity and is placed in the hands *15 of an attorney at law for collection * * *'. Accordingly not only do the facts here show that demand was made, but the law as established by the Supreme Court in the two cases cited gives the holder of the note the right to demand the attorney's fee merely as a result of the failure of the maker of the note to pay at maturity.
"We repeat, of course, that if the evidence showed an agreement to extend, then the attorney's fee could not be collected without a termination of the extension, but the record does not justify the conclusion that there was such an agreement.
"The plaintiff is entitled to the balance due on the note, together with interest and the attorney's fee."
But see First Nat. Bank of Jefferson Parish v. Kindermann, 280 So.2d 888 (La.App. 4th Cir. 1973); writs denied 282 So.2d 720 (La.1973). Factually St. Charles Dairy is inapposite and the language present there is not present here.
We prefer, however, to view the rights and liabilities of the parties here under the contract itself, which is the law between the parties, together with the appropriate articles of the civil code as interpreted by the jurisprudence.
In the credit deed and the note, the defendants obligated themselves to maintain or "keep" insurance on the property and agreed that their failure to do so would mature the note in its entirety, at the option of the holder of the note. They also agreed to pay attorney's fees (1) in the event of suit for collection of the note or any other amount which may be due under the contract, or (2) When said claims are placed with an attorney for collection. There can be no claim of acquiescence by plaintiff of the defendants' failure to keep the property insured. The contract provides for maturing the indebtedness because of this, as well as for the failure to pay any installment when due.
Several articles of the Louisiana Civil Code provide guidelines for our interpretation of the credit deed and note and the rights and liabilities of the parties. Their contract is the "law" between them. Art. 1901. The obligation to pay money is characterized as an obligation to give (Art. 1905) and the failure to pay renders the obligor liable for damages (Art. 1907). The damages due for this failure to pay the law calls interest (Art. 1935), thus the provisions of the code for legal and conventional interest (Arts. 1936, et seq.). Of course, the parties can agree or bind themselves to obligations beyond those of the code, for additional penalties or damages, unless reprobated by law or contrary to good morals. See Arts. 2117 et seq. relating to penal clauses. The penal clause of this article and of Arts. 2118, 2120, 2124, 2125, is synonymous with liquidated damages. Pennington v. Drews, 218 La. 258, 49 So.2d 5 (1950). See also W. K. Henderson Iron Works & Supply Co. v. Meriwether Supply Co., 178 La. 516, 152 So. 69 (1934).
Arts. 1911 through 1914 are also pertinent. In contracts to give or to do, the risk of loss of a thing may be transferred to the person who is to receive it by putting him into default. Art. 1912 also provides that "in cases hereafter provided for" the putting into default is a prerequisite to the recovery of damages. It is noted that promissory notes and bills of exchange are excluded from the rule of Art. 1914 relating to performance under reciprocal obligations to be performed at different times. Art. 1911 provides that a debtor may be put into default by the terms of the contract, by the act of the creditor or by operation of law. One of the forms or methods of putting into default is the protest, made by a notary. See R.S. 10:3-501 et seq., Part 5, Presentment, Notice of Dishonor and Protest, under Commercial Laws, Act 92 of 1974. L.R.S. 10:3-511(2)(a) allows express waiver of protest, notice of dishonor and presentment.
*16 In the instant case, there is an express waiver in the note by the defendants of presentment for payment, demand, notice of nonpayment, and protest. The note and the credit deed state defendants' agreement that their failure to keep the property insured shall mature the note in its entirety at the option of the holder. In Snider v. Bozarth, 180 So.2d 800, 801 (La.App. 4th Cir. 1965), the court stated:
"A promissory note made payable on demand, although due and demandable from the moment of its execution, does not become overdue and in default until after demand for its payment has been made. (See Holstead v. Lewis, La.App., 160 So. 834, 837). Since attorney's fees stipulated for in a note are considered as being in the nature of `liquidated damages,' (See W. K. Henderson Iron Works & Supply Co. v. Meriwether Supply Co., 178 La. 516, 152 So. 69) our Courts have refused to enforce the stipulation where the maker has not been put in default by a prior demand for payment, or where at least no showing is made that such a demand would have been impractical and useless or where it is not shown that some other justification existed for employing an attorney to enforce collection."
The express waivers in the note, including that of demand and of protest, in the note by the defendants, and the terms of the note and contract waives further putting in default under La.C.C. Art. 1911.
Finally, defendants urge that in the event attorney fees are proper, the trial court's award of $4,402.74 should be found excessive. We find no merit in this contention. The stipulation in the note calls for the fee to be fixed at 10 per cent of the amount to be collected. This figure was set by agreement of the parties. "Agreements legally entered into have the effect of laws on those who have formed them . . ." LSA-C.C. Art. 1901. There is nothing in the record to indicate that the figure set for attorney fees was not mutually agreeable. While this court is required to give all just relief to which one is entitled (See LSA-C.C.P. Art. 2164), we cannot relieve one from a legal obligation which in retrospect he claims was imprudently contracted.
The judgment below, at appellant's cost, is
Affirmed.
NOTES
[1] The attorney for vendor is the notary before whom vendor executed the credit deed. The attorney for vendees-appellants is the attorney before whom the vendees executed the credit deed and the note, paraphed by him for identification with the credit deed.
[2] Guttuso v. Jax Federal Credit Union, 270 So.2d 326 (La.App. 4th Cir. 1972).
[3] St. Charles Dairy, Inc. v. Hayes, Jr., 233 La. 217, 96 So.2d 494 (1957).