INTOXICATING LIQUORS—REGULATION—RE-WARD—POLICE JURY—POWERS.

1. The power to regulate the police of taverns, grog shops, etc., is not confined to the mere adoption of regulations, but extends to the taking of such measures as may be deemed expedient to prevent the violation of the regulations after they are adopted, such as the offering of a reward for evidence on which to convict offenders.

(Syllabus by the Court.)

Appeal from Eleventh Judicial District Court, Parish of Red River; Charles V. Porter, Judge.

Action by John W. Carnes and others against the police jury of the parish of Red River. Judgment for plaintiffs, and defendants appeal. Reversed.

William A. Wilkinson, Dist. Atty., for appellants. Scheen & Stephens, for appellees.

PROVOSTY, J. The police jury of the parish of Red River, finding that its license tax of $5,000 upon retailers of spirituous liquors was being evaded, passed an ordinance offering a reward of $50 to any one furnishing evidence for the conviction of the offenders, and the present suit is an injunction of this ordinance by citizens and taxpayers who say the powers of the police jury are limited and defined, and do not include the authority to pass such an ordinance.

The police jury admits that it possesses only such powers as are granted either expressly or by necessary implication, but says that the authority to pass the ordinance in question is necessarily conveyed in the power with which it is vested by section 2743 of the Revised Statutes of 1876 to impose taxes and to "make all such regulations as it may deem expedient * * * to regulate the police of taverns and houses of public entertainment, and shops for retailing liquors, and to impose whatever tax they may see fit on all keepers of grogshops," etc.

The contention of the plaintiffs is, in sub-stance, that the power of the police jury is confined to the adoption of regulations, and does not extend to seeing that the regulations are carried out.

This would be, we think, a too narrow construction. To regulate the police of a tavern is not merely to adopt a regulation, but also to enforce the regulation after it is adopted. It would hardly be contended that a municipality charged with the duty of regulating the police of its taverns could not employ officers to see that the regulations adopted for the good order of the taverns were carried out. The offering of a reward for the conviction of offenders is in reality nothing more than the accomplishing of the same thing by a different means.

The judgment appealed from is set aside, and the plaintiffs' suit is dismissed, at their cost.

(35 South. 268.)

No. 14,265.

H. ABRAHAM & SON et al. v. NEW OR-LEANS BREWING ASS'N et al.*

(April 27, 1903.)

JUDICIAL SALES — ASSUMPTION OF DEBT — RIGHTS OF PURCHASER—MORTGAGE DEBT —COUPONS—INTEREST—ATTORNEY'S FEES.

1. When the Code speaks of confusion destroying the obligation, it does not mean that the active side alone of the obligation is destroyed, but also the passive side, so that a purchaser at a judicial sale, who retains the price of the sale and assumes to pay a debt secured by mortgage on the property, is liberated from his assumption to the extent to which the mortgage debt is due to himself. Because in the deed to this purchaser the entire price is said to be retained to pay the entire mortgage debt—in other words, because in the recitals of the deed the confusion is ignored—the legal situation is not changed; none the less the assumption by the purchaser is reduced by the amount of the debt due to himself.

2. Interest coupons, which by the condition of the contract are required to be presented for payment at the office of the corporation issuing the bonds, bear interest from maturity, 'without presentation, when it does not affirmatively appear that the debtor corporation was prepared to make payment on presentation; aliter when such preparedness affirmatively appears.

3. The stipulation for the presentation of the coupons is in the interest of the debtor on the bonds, and passes with the obligation on the bonds to whomsoever this obligation may pass.

4. The following stipulation for the payment of attorney's fees, namely, "In the event of the nonpayment of said bonds or any one of them at their maturity the mortgagor binds himself to pay the expenses incurred by the holder of the bonds in attorney's fees, said attorney's fees, however, to be fixed at five per cent. on the amount for which judgment may be obtained," when fairly interpreted, means that the mortgagor shall pay attorney's fees in case the employment of an attorney is made necessary by default on any of the payments to be made under the act of mortgage.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by H. Abraham & Son and others against the New Orleans Brewing Association and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Dinkelspiel & Hart, for appellants. Denègre, Blair & Denègre, for appellees.

PROVOSTY, J. The New Orleans Brewing Association, a body corporate, executed bonds to the amount of $1,600,000, and secured same by mortgage on its property; the act of mortgage being passed before Joseph D. Taylor, notary public, on the 31st of May, 1890. Said bonds matured in 15 years, and bore 6 per cent. per annum interest, represented by coupons attached, payable semiannually at the office of the corporation. The corporation having passed into the hands of a receiver, a judgment was rendered in the course of the receivership proceedings ordering all the property of the corporation, including the property embraced in the mortgage, to be sold, and directing that the purchaser be required to retain in his hands the price of the sale, and assume, "in proportion to the amount of his bid," the mortgage represented by the outstanding bonds. The property of the corporation was sold in globo, and was adjudicated to three persons, who in reality were a purchasing committee for the defendant. The part of the price attributable to that part of the property embraced in the mortgage was found to be $479,946.20. This amount the purchasers retained in their hands, as directed by the judgment ordering the sale. The act of sale to these purchasers, passed before Quintero, notary public, recited that said part of the price, $479,946.20, "has been retained by said purchasers, who took said property subject to the said mortgage before Joseph D. Taylor, of May 31st, 1890, reduced as aforesaid to the sum of $479,946.20."

At the time of these proceedings the plaintiffs were holders of $124,500 of the bonds; and the persons to whom the property was adjudicated at the receiver's sale, and who retained in their hands the purchase price of $479,946.20, were the holders of $1,163,100 of the bonds. Of the remainder of the bonds, $230,000 had never been negotiated.

The $479,946.20 thus retained would pay 35.032 cents on the dollar of the mortgage debt. The purchasers, shortly after the purchase, transferred the property to the defendant, the act of sale reciting as follows:

"And the said purchaser takes cognizance of the fact that certain of the properties herein transferred and numbered Second, Third, Fourth, Fifth, Sixth, Eighth and Ninth in the description thereof are subject to a mortgage of $479,946.20 in favor of the holders of the said mortgage bonds of the 'New Orleans Brewing Association,' said sum of $479,946.20 being the amount to which the said mortgage securing said bonds was reduced, as set forth in said act of sale before Lamar C. Quintero, Notary Public, of October 4th, 1899, by which the present vendors acquired said property; and the said vendors declare that of the total $1,370,000 face value of said bonds, they are the holders and owners of $1,163,100 face value thereof, and they bind themselves to transfer and deliver the same to the said purchaser, the said 'New Orleans Brewing Company,' as soon as said purchaser shall have paid and discharged the said $295,000 of indebtedness herein assumed by it, such delivery or deliveries to be made when and as the bonds are released by the payment of the notes which they are respectively pledged to secure as aforesaid; and it is understood and agreed that in the meantime the said vendors shall continue to be the holders and owners of said bonds, subject, however, to the obligation to account to the said purchaser, when it shall have performed its obligations in the premises, for any and all moneys they may have collected or received on account of said bonds or the indebtedness of the said 'New Orleans Brewing Association' evidenced thereby.

And the said purchaser also takes said properties subject to whatever obligations the present vendors may be subject to by virtue of the provisions of the said judgment of the Civil District Court of June 1st, 1899, under which they acquired the same."

The plaintiffs are asking in this suit that the $124,500 of bonds held by them be decreed to be due by the defendant for the full face amount thereof, and to be secured by mortgage for the said full face amount on the property acquired by the defendant as aforesaid; and also are asking that the defendant be condemned to pay the accrued interest on the said bonds according to the full face value of the coupons attached to said bonds. The defendant pleads that the $1,370,000 of mortgage bonds have stood on a footing of perfect equality, and have had equal claim to be paid out of the proceeds of the sale of the mortgaged property, and that as a consequence the bonds held by plaintiffs are entitled only to their pro rata share of the $479,946.20, the price of the property, retained as aforesaid (that is to say, are entitled to 35.032 cents on the dollar, that being the pro rata which the said retained amount will pay on the $1,370,000 of bonds), and that the coupons have been reduced in the same proportion; and that defendant has not only not contested plaintiffs' claim for that much, but has been ready and willing to pay same as falling due.

The plaintiffs do not assail the receivership proceedings, and do not deny that the mortgage has been reduced from $1,370,000 to the amount of the purchase price of the sale retained by the purchasers. They admit that if the sale had been for cash they would have received only 35.032 cents on the dollar, and also that they would have been entitled to no more if the purchasers had been third persons not holding any part of the bonds. Their theory is that the purchasers became their own creditors for the amount which the bonds held by them were entitled to receive out of the price of the sale, and that, as no one can be his own creditor, the bonds so held became extinguished, leaving the bonds held by other parties alone outstanding, and alone payable out of the $479,946.20 retained by the purchasers—an amount more than sufficient to pay, dollar for dollar, these bonds held by other parties.

By this operation these other parties, holders of only $206,900 of the bonds, would get $206,900 of the price of the mortgaged property, while the purchasers, holders of $1,163,100 of the bonds, would get $273,046.20. That is to say, of the series of bonds, all of equal dignity, those held by plaintiffs would get 100 cents on the dollar, while those held by the purchasers would get a little more than 20 cents on the dollar. A theory that brings out such a result must needs be wrong, and the fallacy of it is not hard to find. It assumes that confusion extinguishes only the credit part of the obligation, whereas the fact is that it extinguishes also at the same time the debit part. "The debt and the claim are extinguished." Mourlon, Comm. on Art. 1300, C. N. "Les deux droits—the two rights—active and passive" (Marcadé, on same article), "destroy each other." Pothier, Obligations, No. 380. These purchasers, at the same time that they ceased to be creditors on the bonds, ceased also to be debtors on the assumption. The operation was that they, as debtors, paid fictively to themselves, as creditors, the pro rata amount coming to the bonds held by them out of the $479,946.20, and reduced by that much the amount of the purchase price retained by them, leaving in their hands only the amount coming to the bonds held by others. So that plaintiffs are now claiming an amount which the vendors of defendant, in strict conformity with the terms and conditions of their contract, have already paid out. The payment, it is true, was fictive; but, from the legal standpoint, it was not less real than if counted out in crisp bank bills or in golden dollars to the plaintiffs themselves.

Because these purchasers ignored this fictive payment, both in their act of purchase from the receiver and in their act of sale to the defendant, the legal situation was not changed. There never was any intention on their part to abandon or remit their right as holders of the bonds to claim pro rata payment out of the price of the sale, and there is nothing in their conduct to afford a foundation for estoppel. The recitals of the acts never left in doubt for a single minute that the $479,946.20 was retained to pay the $1,370,000 of bonds. It so recites in express, explicit terms. Perhaps it would

have been more regular to have made the recitals of the acts correspond with the legal situation, but the form of the acts did not change the substance of things, and doubtless there was a good reason for giving to the acts this particular form. At all events, plaintiffs have not been prejudiced, and therefore are without grounds of complaint.

The act of sale by the purchasers to the defendants was a private transaction between these parties, with which plaintiffs had no concern, beyond the fact that the defendants assumed in the act to pay to them 35.-032 cents on the dollar of their bonds. If the parties to this act chose to deal with the situation as if the fictive legal payment had not taken place, that was a matter which could not prejudice the plaintiffs, and with which they had no concern.

Another issue between the parties is whether defendant owes the interest which accrued before the date of the receiver's sale. It seems to us that the mere statement of the proposition answers it. The purchasers and the defendant, their vendee, owe interest on the $479,946.20 only from the time they received or retained it. In other words, of the interest represented by the coupon maturing December 1, 1899, defendant owes only that part which accrued from and after August 24, 1899, the date of the sale and of the retention of the purchase price.

Another issue is as to whether defendant owes plaintiffs interest upon the amount represented by the matured, but unpaid, coupons. The coupons are a debt separate from the bonds to which they are attached. Conger v. City of New Orleans, 32 La. Ann. 1250. And they bear interest from the date they are payable. 2 Daniels on Neg. Inst. § 1513; Jones on Corporate Bonds, §§ 256, 258. But this is only "by way of damages" where payment has been "unjustly neglected or refused." Same authorities. The question is, therefore, whether defendant has unjustly neglected or refused to pay these coupons. The evidence is that defendant has been at all times willing and ready to pay this interest, and that, if same has not been paid, the fault has lain exclusively with plaintiffs, who have not presented the coupons for payment, and have been unwilling to accept payment on the reduced basis on which alone they were entitled to claim.

There is no merit in the contention that because the New Orleans Brewing Association, at whose office the coupons were made payable, had gone out of existence, there was no longer any place agreed upon where the coupons should be presented for payment. For all the purposes of the payment of the coupons, that corporation has been succeeded by the defendant, and defendant had an office, as plaintiffs knew perfectly well. The defendant duly published a notice that it would pay the coupons at its place of business on presentation. This was all it could be required to do. It could not be required to do the next to impossible thing, of locating the bonds, which passed by mere delivery, and hunting up the holders, so as to tender payment of the coupons. A place was agreed upon for the presentation of the coupons for the very purpose of avoiding this difficulty. In the case of Morice v. New Orleans & C. R. Co., quoted from the Court of Appeal of the parish of Orleans, the court said: "The debtor might have been exonerated from interest by having funds at the appointed place and time." The evidence shows in the instant case that the defendant was willing and ready at all times to pay the coupons on presentation at its office. It did not keep the money at its office, but kept it in bank, as is usually done, and was ready to pay by check, or to get the actual cash, and pay in actual cash at a moment's notice. This is to have the money on hand, within the meaning of the law.

The authorities quoted by plaintiffs, namely, Huey & Jones v. Macon Co. (C. C.) 35 Fed. 481; Marlor v. Texas & Pacific Co. (C. C.) 21 Fed. 383, 386; Smith v. Talapoosa Co., 2 Woods, 574, Fed. Cas. No. 13,113— to the effect that a putting in default by presentation for payment is not necessary, in order that interest should run on matured coupons, have reference to where the debtor is not willing and ready to pay on presentation. The rule is otherwise where the debtor is willing and ready to pay. In Walnut v. Wade, 103 U. S. 696, 26 L. Ed. 531, the Supreme Court of the United States said:

"The failure to present the coupons for payment does not prevent the running of interest. If the town had shown that it had

money to pay the coupons at the time and place where they were payable, this would have been a defense to the claim for interest."

2 Daniels on Negotiable Instruments (4th Ed.) § 1515, p. 534, has the following:

"But should the defendant corporation show a continued readiness to pay at the times and place of payment, the interest would then be abated. That is all that is necessary to protect the defendant, and it is no more than justice to the plaintiff."

To the same effect is the decision of this court in the case of Thiel v. Conrad, 21 La. Ann. 314.

The stipulation on the face of the coupons was that they should be presented for payment at the office of the New Orleans Brewing Association. This stipulation inured to the benefit of the defendant when it took the place of that corporation as debtor on the coupons.

Another issue is as to whether defendant owes attorney's fees. The act of mortgage stipulates that "in the event of the nonpayment of said bonds or any one of them at their maturity the mortgagor binds itself to pay the expenses incurred by the holder of the bonds in attorney's fees, said attorney's fees, however, to be fixed at five per cent. on the amount for which judgment may be obtained." We think, by a fair interpretation, this means that the mortgagor shall pay attorney's fees in case the employment of an attorney is made necessary by default on any of the payments to be made under the act of mortgage; and we find that defendant has not defaulted, but has been willing and ready at all times to meet the payments on the bonds.

We find no error in the judgment appealed from. It is accordingly affirmed.