### SCHAEFER et al. v. BROWN. *
### No. 1249.

Court of Appeal of Louisiana, First Circuit.

Dec. 4, 1933.

W. A. Benton, of Baton Rouge, for appellant.

Taylor, Porter & Brooks, of Baton Rouge, for appellees.

ELLIOTT, Judge.

Miss Carey Brown, owner and holder of a mortgage note for $1,000, executed and signed by Mrs. Fannie B. Schaefer, sued out executory process on the note and act of mortgage whereby it was secured and caused the mortgaged immovable to be seized and advertised for sale to pay the principal and interest due on the note and the attorney's fees stipulated in the act of mortgage. Whereupon Victor B. Schaefer, Henry Schaefer, and Mrs. Phyllis Schaefer Burley, children and sole heirs of Mrs. Schaefer, alleging to the court that they had tendered to Miss Brown, through her attorney, the amount due on the note in principal and interest, and that the attorney's fee claimed in Miss Brown's petition for executory process was not due, enjoined the sale.

The judge a quo maintained the injunction, and Miss Brown has appealed.

There are some other contentions urged in the pleadings and briefs of the parties, but the only real question at issue is whether the plaintiffs owe the attorney's fee stipulated in the act of mortgage.

■ The record contains an exception of no right or cause of action, filed by Miss Brown against the petition for injunction, but it was not ruled on by the lower court, so we do not consider it.

The $1,036 in principal and interest due on the note was deposited by the Schaefers in the registry of the court.

On July 12, 1933, Miss Brown, with the consent of the plaintiffs in injunction and without prejudice to her right to recover the attorney's fee, withdrew the sum deposited, leaving nothing except the attorney's fee in controversy.

The note bears date November 16, 1917, was made payable one year after date, with 8 per cent. per annum interest thereon from date until paid. The interest credits on the back of the note show that the interest in amount $80 has been paid each year since its execution up to and including November 16, 1932, a period of 15 years. It appears from the credit entries that only two of these payments were made on November 16th, which was the annual maturity, and that the

others were made from one to twelve days later. Interrogatories were propounded to Miss Brown, and her answers indicate that she was not dissatisfied with these delays. At least she made no protest. She was seemingly satisfied and content to let the principal continue earning the annual interest.

Her answers to the interrogatories further show that she has been the owner and holder of the note since it was executed, and that no agreement was entered into between her and Mrs. Schaefer extending the note for another year, when the annual interest payments were made, but she says that no demand was made on Mrs. Schaefer for payment of the principal. Therefore a tacit understanding to that effect seems probable, and that following the payment of November 16, 1932, if Mrs. Schaefer had not died, there would have been no demand for the principal for another year. Mrs. Schaefer died on March 20, 1933.

Miss Brown's attorney testifies that, the next day after Mrs. Schaefer's death, a relative of Miss Brown turned over to him the matter of attending to the note for her aunt, and on the next day thereafter, March 22d, he wrote Mrs. Burley informing her that the note which her mother had owed had been referred to him for attention. He further stated in his letter that the note had matured some time in November, but had been carried over until this time; that he had no desire or intention to proceed in the matter hastily, but, at the same time it would be well for her, as the heir, to get in touch with him right away so that he might have information as to when the payment of the note would be made. Otherwise, he says: "We of course will have to start foreclosure proceedings."

This letter was sent to Mrs. Burley at Monterey, La. She was in Baton Rouge at the time and did not receive it for some days. Upon receiving it she sent it back to her brother, Victor B. Schaefer, in Baton Rouge, and in about a week, counting from the date it was written, V. B. Schaefer called on Miss Brown's attorney in Baton Rouge and promised to pay him the note out of avails of certain life insurance policies left by Mrs. Schaefer, in which V. B. Schaefer was the beneficiary.

Victor B. Schaefer, testifying as to the promise made by him at this time, says: "I promised to pay the note, but there was nothing said about attorney's fees, and no claim was made for attorney's fees at this time."

Miss Brown's attorney testifying concerning the same conversation says that Schaefer told him: "I am going to collect some insurance money and I want to ask you to hold up any proceedings in this matter until I collect the money and I will pay it." I said: "That will be absolutely satisfactory Mr. Schaefer. He asked me the amount due, etc. I told him I would furnish him a statement of it."

It appears that the note was in the Bank of Baton Rouge at the time, and her attorney did not have it, but he sent and got it, made a statement, and sent it to Schaefer's attorneys. The statement is in fact a letter dated March 31, 1933, addressed to Schaefer's attorneys, and claim is made in it for 10 per cent. attorney's fees. It seems from the testimony that, as soon as the letter claiming attorney's fees was received, the fee was protested on the ground that none was due. Discussions followed in which Miss Brown's attorney claimed that, if the Schaefers owed the note, they owed the attorney's fees; that the promise to pay the note included a promise to pay the attorney's fees, and that the attorney's fees were just as much due as the principal and interest.

On or about April 25th, which was about five weeks after Mrs. Schaefer's death, V. B. Schaefer and his attorney called on Miss Brown's attorney and formally offered to pay and tendered to him the principal and interest due on the note, but did not tender any attorney's fee, and announced that same would not be paid. The tender was refused on the grounds that attorney's fees were also due, and that the tender was insufficient in amount.

The contention that, if the Schaefers owe the note, they likewise owe the attorney's fee, is not supported by the note. The note in question contains no stipulation obligating the maker or heirs to pay attorney's fees. There is nothing in the note on that subject, but the act of mortgage, whereby it was secured, contains a stipulation on the subject which may be divided into two parts.

In the first part Mrs. Schaefer "obligates herself and her heirs to pay and reimburse unto said Mrs. L. B. Knox and such person or persons who may be the holder or holders of said promissory note, all such lawyer's or attorney's fees together with all such costs, charges and expenses as said Mrs. L. B. Knox or any such holder or holders shall or may incur or pay in event of the non-payment of said promissory note at maturity."

No liability for attorney's fees was incurred under this part of the agreement because the back of the note and the testimony show that, when the November 16th maturity arrived, Miss Brown accepted the interest due at the time and did not refer the note to nor engage the services of an attorney nor incur any other expense concerning the collection of the note. She did not request payment of the principal, but allowed matters to remain and continue as had been the custom between the parties since the first maturity in November, 1918, and, having passed the maturity of November 16,

1932, she cannot recall her act and claim of the Schaefer heirs an expense on account of attorney's fees which she did not incur.

█ The latter part of the stipulation reads: "Or in case it should become necessary to place said note in the hands of an attorney at law for collection, suit or otherwise, said attorney's fees, however to be fixed at 10% on the amount due or so in suit."

In order for Miss Brown to recover attorney's fees under this stipulation, it is necessary for her to show the necessity for placing the note in the hands of an attorney for collection, suit or otherwise. The evidence does not show that a necessity of the kind existed, and the showing is to the contrary. The showing is that, when the Schaefer heirs were notified that payment was expected, they agreed to pay. The promise to pay the note did not include a promise to pay attorney's fees, because the note did not call for any. The attorney's fees, called for by the act of mortgage, were due only in the contingency mentioned in the act of mortgage. The heirs requested a reasonable time within which to pay the note. The letter of March 22d stated that there was no desire or intention to proceed in the matter hastily and called for information as to when payment would be made. The concluding statement, "Otherwise we of course will have to start foreclosure proceedings," does not change the situation. The claim for attorney's fees in the letter of March 31st saying, "Mr. V. B. Schaefer, the son, advises payment of the amount due will be made in about 30 days, Please therefore let me hear from you as soon as you possibly can," does not create any right to attorney's fees. The right thereto depends on whether, immediately following the death of Mrs. Schaefer, it reasonably appeared to Miss Brown to be necessary, in the protection of her rights, to place the note in the hands of an attorney for collection, suit or otherwise.

In the Succession of Foster, 51 La. Ann. 1670, 26 So. 568, we copy the first part of the syllabus concerning the merits: "A stipulation, in an act of mortgage, whereby notes are secured, which reads: 'In case it becomes necessary to resort to legal proceedings for the recovery of the amount of said notes, or any part thereof, he (the mortgagor) hereby binds himself to pay the fees of the attorney who may be employed for that purpose, which fees are hereby fixed at ten per cent on the amount sued for,'—imposes upon the holder of the notes, seeking to recover the fees, the obligation of proving, in case his right to such recovery is contested, the existence of the conditions contemplated by the stipulation."

Other parts of the opinion are pertinent and could well be quoted, but we do not think it necessary to do so. Alexandrie v. Saloy,

14 La. Ann. 327, Simonds v. McMichael, Sheriff, 46 La. Ann. 469, 15 So. 23, Succession of Howell, 121 La. 555, 46 So. 933, are to the same effect.

The stipulation in the present case is not unlike that which existed in Standard Brewing Co. v. Anderson, 121 La. 935, 46 So. 926, 15 Ann. Cas. 251, in which the court said: "Where, month after month, the lessor has been receiving payment of the rent a few days later, without objection, if he desires in the future to hold the lessee strictly to payment on the day the rent falls due, he must give him notice to that effect; otherwise, the lessee will not be in legal default from delaying the usual time."

Bonnabel v. Metairie Cypress Co., 129 La. 928, 57 So. 271 is another case based on a delay in the payment of rent, in which the court reached a similar conclusion.

In this case, when Miss Brown received the interest due on the November 16th maturity, the situation continued seemingly by the tacit consent of Miss Brown and Mrs. Schaefer as it had done in the past. The death of Mrs. Schaefer, about four months later, did not so change the situation as to do away with the agreement in the act of mortgage that attorney's fees were not to be due unless the service of the attorney became necessary for the protection of the rights of the holder of the note. The evidence justifies the conclusion that the heirs were willing and able to pay, within a reasonable time, so Miss Brown has no just grounds for adding attorney's fees to the obligation of the heirs. The obligation is, instead, her own.

We are cited in behalf of Miss Brown to the Succession of Savoie, 143 La. 363, 78 So. 594, but we do not think that case controlling. In that case the opinion shows that the stipulation in one of the notes was as follows: "In the event default is made in the payment of this note at maturity, and it is placed in the hands of an attorney for collection or suit is brought on same." And the opinion says that the stipulation in the other note was "That the fees are to be due if the note is 'sued upon or placed in the hands of an attorney or collector for collection.'" The opinion differentiated the undertaking in the Savoie notes from that in Succession of Foster and Succession of Howell, and did not consider the opinion in the Savoie Case conflicting with the earlier cases cited.

Miss Brown relies on a decision of this court in Succession of Caranne, 147 So. 562, 565. In that case the opinion says that the notes stipulated: "The maker, Miss Caranne, binds herself to pay additionally, as attorney's fees, ten per cent. of the principal and interest involved in this note, in case same is placed in the hands of an attorney-at-law, at maturity, for collection by

suit, or otherwise.'" The opinion says that the notes were placed in the hands of attorneys for collection.

In this case we have seen that, when the maturity of November 16, 1932, arrived, Miss Brown accepted the interest and was satisfied therewith and did not incur any expense for legal services. But immediately following the death of Mrs. Schaefer, about four months later, she engaged the services of an attorney. The evidence does not show that it was necessary to do so in the protection of her rights, and, as the stipulation in the act of mortgage was that the debtor of the note was not to be liable for attorney's fees unless it became necessary to place the note in the hands of an attorney for collection, suit or otherwise, it seems to us that the Schaefer heirs are not liable for the fees claimed of them, and that the judgment appealed from is correct.

Judgment affirmed, defendant in injunction to pay the costs of both courts.