## HOLSTEAD v. LEWIS.*
### No. 4976.

Court of Appeal of Louisiana.
Second Circuit.
May 2, 1935.

*Rehearing denied June 4, 1935.

Dhu Thompson, of Monroe, and Elder & Elder, of Ruston, for appellant.

Barksdale, Warren & Barksdale, of Ruston, for appellee.

TALIAFERRO, Judge.

The late Judge J. B. Holstead, of Lincoln parish, on January 26, 1933, executed his promissory note for $4,000, due on demand, stipulating 8 per cent. per annum interest from date, to Mrs. Kate Holstead Lewis, and secured payment thereof by special mortgage on improved property in the city of Ruston, La. Thereafter interest was paid on the note to February 1, 1934. It contains this stipulation in regard to payment of attorney's fees, following his promise to pay the principal and interest: "And all attorney's fees incurred in the collection of this note, or any portion thereof including interest, which fees are hereby fixed at ten per cent., on the amount to be collected."

Judge Holstead and his wife both died a year or more after the date of this mortgage. George B. Holstead was appointed executor of his succession and administrator of the wife's succession prior to August 7, 1934. The record does not disclose the exact date. On this date counsel for Mrs. Kate Holstead Lewis, holder of the note, addressed the following letter to the executor:

"Mr. Geo. B. Holstead, Ruston, Louisiana.

"Dear George: We hand you herewith statement of note of J. B. Holstead due Mrs. Kate Holstead Lewis. We have figured interest and attorney's fees to September 11, 1934, which is about when we figure you will be in position to pay same. If it is paid sooner, it will be discounted at the rate of eight per cent per annum, of course, and if paid later, additional interest will accrue at the same rate. Please acknowledge this statement by return of mail and advise us whether or not it is approved and will be paid, and oblige,
"Yours truly,
"Barksdale, Warren & Barksdale,
"By Allen Barksdale."

The statement referred to in this letter is in the form of a bill, and contains the following charges against the executor:

| | |
|---|---|
| Principal of note | $4,000.00 |
| 8% interest from 1/26/34 to 9/11/34 | 200.00 |
| Attorney's fees at 10% | 420.00 |
| Total | $4,620.00 |

The executor was absent on vacation when this letter was mailed. It was not actually received by him until his return August 23, 1934. He immediately referred it to his counsel, who, on that date, wrote Mrs. Lewis' attorney the following letter:

"Barksdale, Warren & Barksdale, Attorneys at Law, Ruston, Louisiana.

"Re: Succession of J. B. Holstead—claim of Mrs. Lewis.

"Gentlemen: Mr. George B. Holstead, administrator of the above succession, has just handed us your letter of August 7th instant, and attached itemized bill. It was impossible for Mr. Holstead to reply to your letter by return mail, as requested by you, due to the fact that he has been out of town on his vacation and did not return to Ruston until last night.

"With respect to the allowance of your claim, we are authorized to inform you that the principal and interest, as shown on your statement, will be allowed as a claim against the estate. However, you are also advised that your demand for attorney's fees is rejected and that the administrator will not pay any attorney's fees.

"We trust this is satisfactory. Of course, you have a right to oppose the account and request allowance of the attorney's fees. Before you take any such step, if you anticipate taking any action to compel the allowance of the attorney's fees, let us remind you that it has been entirely unnecessary to place this instrument in the hands of an attorney for collection. This statement is substantiated and proven by your allegations in your opposition to the appointment of an administrator of the estate of Mrs. Holstead to the effect that Mrs. Lewis did not desire to collect this debt and that she was fully satisfied and content to permit the debt to stand as an investment with the interest provided in the note.

"Respectfully yours,
"Elder & Elder,
"By Hall T. Elder."

No further move in the matter seems to have been made by either side until September 5th, when Mrs. Lewis instituted executory proceedings on the note and mortgage for the full amount thereof, principal, interest, and 10 per cent. attorney's fees. The executor sued out a rule to show cause why a preliminary injunction should not issue enjoining and restraining further proceedings looking to a sale of the property, coupled with the prayer that, after hearing on the merits,

a permanent injunction do issue. The basis of this injunction suit is reflected from certain allegations of the executor's petition which we paraphrase: That he is now and has been all the while ready and willing to pay the principal and accumulated interest on the note, but not the attorney's fees claimed; that said principal and interest to August 7, 1934, had been tendered to and refused by plaintiff's counsel, for the reason that said attorney's fees were not also tendered, which amount so tendered is deposited in the court's registry for the benefit of plaintiff and as a judicial tender to her, and to be delivered to her on her claim against the succession being approved by the court and in conformity with law; that said attorney's fees cannot be collected and should not be allowed because no legal demand for payment of the note was ever made; and further:

" * * * On the contrary, the said Mrs. Kate Holstead Lewis and/or her attorneys have stated to your petitioner on numerous occasions that payment of the note was not desired and that on the contrary the said Mrs. Kate Holstead Lewis desired to retain said note as an investment; petitioner shows that one of such statements was made on or about June 1, 1934, and petitioner further shows that in the opposition of Mrs. Kate Holstead Lewis to the appointment of petitioner as the executor of the last will and testament of Mrs. Lula Holstead, the said Mrs. Lewis made the following allegation in Article 4 of her opposition:

" 'That a single piece of property was sold at forced sale this day and could have been sold at private sale, for a sufficient sum to discharge all indebtedness, except possibly that due appearer which is secured by mortgage on a single piece of property and which is considered an investment by appearer the payment of which she is not seeking.' "

He further avers that he relied on said statements and allegations and was thereby led to believe that payment of the said note was not desired; that in the letter of August 7th, written by counsel of Mrs. Lewis to his own counsel, attached to and made part of the petition, Mrs. Lewis did not demand payment of said note, but impliedly gave petitioner permission to pay it at any time he desired to do so; that said letter and statement of account (inclosed therewith) constitute the only instance in which payment of the note was ever mentioned or suggested; that the reply of his own counsel to said letter is attached to and made part of his petition; that no further demand for

payment of the note was made until the foreclosure suit was filed, and therefore it was entirely unnecessary to place said note in the hands of attorney for collection, and such fees are not recoverable for that reason. It is further alleged that, by presenting the note to the executor for acceptance as a succession liability, and it being accepted as such to the extent of principal and interest, Mrs. Lewis waived her right to executory process to enforce its payment.

Defendant in rule interposed exceptions of no cause and no right of action to the petition for injunction, which was at first sustained, but, on rehearing, overruled. Reserving all rights under the exceptions, defendant answered. The allegations of fact and the correctness of legal conclusions alleged and relied upon by plaintiff in rule to succeed in the case are all denied. It is averred that, as the mortgage securing payment of the note foreclosed on imports confession of judgment and authorizes executory process and contains the pact de non alienando, she is entitled to executory process thereon to enforce the note's collection.

All the allegations of fact contained in the petition for injunction, including letters attached, as reflected from minute entry, were admitted to be true, and the rule was submitted for decision on the face of the record, supplemented by this admission. Preliminary injunction was granted, but on trial of the case on its merits, with same evidence as was used on trial of the rule, the injunction was dissolved and the suit dismissed. From this last judgment plaintiff in rule suspensively appealed.

Before the rule was tried, the executor deposited in the registry of the court an amount sufficient to pay the principal of the note and accrued interest thereon to that date. This amount was afterwards withdrawn, without prejudice of the rights of either side, and applied as credit on the note. Therefore the only remaining question at issue is whether the demand for attorney's fees is well founded.

In view of the stipulation in the mortgage note that the maker would pay all "attorney's fees incurred in the collection" thereof, which were fixed at 10 per cent. of the amount to be collected, we have only to determine whether, in view of all the facts and circumstances bearing upon the question, it was necessary to employ counsel and incur any attorney's fees in order to collect the note. It is well to bear in mind that this note was a succession liability; that the successions

had been opened in the court of the mortgagee's domicile and were being administered for the benefit of the heirs, creditors, and any others concerned, under the eye of the court. It is also well to remember that this note was tendered to the executor for acceptance as a succession liability, and was approved as such to the extent of principal and interest; and the letter of Mrs. Lewis' counsel to the executor of August 7, 1934, clearly shows that it was then rather confidently expected that the executor would be in a position to pay the note and interest by September 11th, or within less than five weeks. A foreclosure proceeding could not have been instituted and closed by sale within that period.

The record as made up contains the following admissions on the part of Mrs. Lewis:

(1) That the executor had been at all times ready, able, and willing to pay the principal and accrued interest on the note.

(2) That tender of an amount equal to the principal and interest on the note had been made to her counsel after August 7th, and presumably before executory process was filed on September 5th, and was refused because attorney's fees were not included therein.

(3) That Mrs. Lewis declared in a pleading filed in a prior litigation between her and the executor, referring to the note in question, that she considered it an investment and was not seeking its payment. The fact that she was willing to have the obligation retired by the executor in due course of his administration reveals unmistakably that she was in no haste for the money, but rather courted delay because of the accumulating interest on an obligation deemed to be well secured.

(4) That the executor relied upon the verbal statements and record admissions of Mrs. Lewis and was led thereby to believe that payment of the note was not then desired.

And (5) that no amicable demand for payment of the note was made before filing suit thereof, except such as may be inferred from counsel's letter of August 7th.

The exception of no cause and no right of action filed by defendant in rule is urged here, but it is without merit. The petition, with attached exhibits, clearly discloses that there was no clash between the executor and mortgagee; that the note was recognized as a succession liability, was tendered for payment in due course of administration, and that no necessity for incurring counsel fee to collect same existed.

■ Where notes and other forms of contracts provide for payment of counsel fees by the obligor on his default, courts generally have followed a very liberal policy in the enforcement of such covenants, but such a stipulation does not invariably justify imposition of such fees upon the obligor. There are exceptions to this well-recognized rule. It must appear that the status of things, when the obligation matures, is such that the incurring of the fee by employment of counsel to collect the obligation or to closely watch matters to insure collection eventually is justified. We can conceive of many cases where the incurring of the fee would not be justified, after maturity of the obligation, and therefore not enforceable, if incurred, in a court of justice.

■ The note involved in this case was payable on demand. Prescription on such an obligation began with its date. Moore v. Oliphant, 18 La. App. 278, 137 So. 593, and cases therein cited. Therefore, for the purposes of suit to enforce its payment, it became exigible the day of its execution, but in such a case the maker is not in default until demand for payment is made on him. It was, without doubt, the intention of the maker and payee that the note should be allowed to run indefinitely, and only the death of the maker brought interruption of this understanding. Interest was paid on it for over one year, and the holder was pleased to carry it longer because she considered it a safe investment of her money. In view of these circumstances, the attitude of Mrs. Lewis, in respect to not adopting a hasty course to collect the note, is not surprising, but, on the contrary, the one reasonably to be expected. The obligation was in liquid form, its status as a liability of the succession was admitted by the executor, who, it is also admitted, was able, willing, and ready to pay it on demand. In these circumstances, can it be rationally said that it was necessary to "incur attorney's fees," an additional liability of the succession, to collect the note? It seems to us that to ask this question is to answer it. All the attorneys did was to tender the note to the executor for acceptance, as a liability of the succession. Its payment was assured in due course and promptly. Such a course negatives the thought that the note was placed in the hands of the attorneys for enforcement of collection by foreclosing the mortgage. It was only after the executor had refused to agree to pay the charged attorney's fees that foreclosure was resorted

to. The fee had not been legally incurred prior to bringing suit, because, as said before, such a course was not necessary to enforce collection.

There is a long line of decisions of both the Supreme Court and the Courts of Appeal of the state which supports the views we have expressed herein.

In Succession of Foster, 51 La. Ann. 1670, 1673, 26 So. 568, 569, it is said: "The fee of the attorneys stipulated in the act of mortgage is due when the mortgagee is bound to employ counsel to attend to his claim. Levy v. Beasley, 41 La. Ann. 832, 6 So. 630; Mullan v. His Creditors, 39 La. Ann. 397, [399], 2 So. 45.".

It follows as a sequence, if the holder of the note is not bound to employ counsel to collect it, the fee is not properly incurred and is not collectible from the succession.

In H. Abraham & Son et al. v. New Orleans Brewing Ass'n et al., 110 La. 1012, 1013, 35 So. 268, the rule is expressed, quoting from the syllabus, as follows: "The following stipulation for the payment of attorney's fees, namely, 'In the event of the nonpayment of said bonds or any one of them at their maturity the mortgagor binds himself to pay the expenses incurred by the holder of the bonds in attorney's fees, said attorney's fees, however, to be fixed at five per cent. on the amount for which judgment may be obtained,' when fairly interpreted, means that the mortgagor shall pay attorney's fees in case the employment of an attorney is made necessary by default on any of the payments to be made under the act of mortgage."

In Succession of Howell, 121 La. 955, 960, 46 So. 933, 935, the court said: "The claim for attorney's fees was made, so far as the opposition discloses, on the ground that the act of mortgage provided for them, and without reference to any facts going to show that any attorney's fees had become demandable since, under the terms and conditions of the mortgage act. There is no evidence in the record tending to show that there had been any clash between opponent and the administrator which made the employment of an attorney and the institution of a suit necessary."

It will be noted from this quotation and from other parts of the opinion that the fee was demanded purely and simply because the mortgage carried the usual stipulation regarding the payment of such a fee. The court very correctly held that it was neces-

sary to show facts and circumstances justifying and rendering it necessary to employ counsel and incur the fee.

In N. and C. Philips v. Lorenzo, 3 La. App. 387, 389, it was said: "Neither interest nor attorney's fees are due on a writ for executory process, when it does not appear that a suit was necessary."

To the same effect are Succession of Burke, 107 La. 82, 85, 31 So. 391; Wahler v. Collins, 4 La. App. 702, and Wunderlich v. Simpkin, 5 La. App. 35, 40.

In Schaefer et al. v. Brown (La. App.) 151 So. 650, it was held, as reflected from the syllabus, that: "Under mortgage providing for attorney's fees where necessary to place note in attorney's hands, payee could not recover attorney's fees from maker's heirs where payee accepted interest at maturity but engaged attorney's services immediately after maker's death to collect note and heirs tendered payment within reasonable time."

In W. K. Henderson Iron Works & Supply Co. v. Meriwether Supply Co., 178 La. 516, 519, 152 So. 69, 70, after referring to the Burke and Howell Cases, supra, the court said: "In other words, those cases hold that, where an attorney has been employed, not for the purpose of collecting any part of the debt itself, but for the sole purpose of mulcting the debtor with the attorneys' fees, such attorneys' fees will not be allowed."

In this case it was found that the services of counsel were necessary to watch the progress of receivership affairs to the end that the plaintiff would not lose opportunity to collect the proper amount of dividends coming to it.

We are of the opinion that the attorney's fees sued for in the present case were unnecessarily incurred and should not be allowed. It is unnecessary to pass on other issues, more or less of a collateral nature, raised by the pleadings.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, reversed, and set aside; and there is now judgment for plaintiff in rule, George B. Holstead, executor, and against defendant in rule, Mrs. Kate Holstead Lewis, recognizing his right to a permanent injunction herein, as prayed for, and it is hereby ordered that a permanent injunction issue herein restraining and enjoining defendant in rule from proceeding further with the sale of the property described in the petition for injunction herein,

on account of the claim for attorney's fee herein discussed, which fee, it is hereby decreed, is not a proper charge against plaintiff in rule.

It is further ordered that defendant in rule pay all costs of the case.