**LAGARDE FINANCE COMPANY,**
Appellant,

v.

Nancy D. VINET, Appellee.

Nancy D. VINET, Appellant,

v.

**LAGARDE FINANCE COMPANY,**
Appellee.

No. 21460.

United States Court of Appeals
Fifth Circuit.

June 15, 1965.

Felix H. Lapeyre, James H. Kepper, Jr., Stewart J. Kepper, Kepper, Moulin & Kepper, Chaffe, McCall, Phillips,

Burke, Toler & Hopkins, New Orleans, La., for appellant-appellee.

Paul J. Thriffiley, Jr., Charles W. Lane, III, New Orleans, La., for appellee-appellant.

Before WISDOM and GEWIN, Circuit Judges, and BOOTLE, District Judge.

GEWIN, Circuit Judge:

The primary issue in this diversity case is whether the appellant, Lagarde Finance Company, Inc., is entitled to $2,904.70 attorney's fees out of the proceeds of certain life insurance policies that have been deposited in the registry of the court by the Mutual Life Insurance Company of New York. The policies were assigned to Lagarde by the deceased insured to secure a promissory note executed in Lagarde's favor. Lagarde's claim to the fees was contested by the appellee, Nancy D. Vinet, the widow of the deceased insured and the named beneficiary of all the policies. The district court disallowed the attorney's fees.[1] After a careful examination of the Louisiana jurisprudence, we reluctantly disagree and reverse.

On September 10, 1958, Eunice J. Vinet, as insured and owner, and Nancy D. Vinet, as beneficiary, executed a written assignment of five of Mutual's life insurance policies aggregating $100,000.00, to the Lagarde Finance Company as collateral security for any and all liabilities then existing or that might thereafter arise. This assignment was duly filed with Mutual. At the time of the death of Eunice J. Vinet, Lagarde was in physical possession of the insurance policies. Subsequently, Eunice J. Vinet and one Hebert executed and delivered to Lagarde a monthly installment note for $3,699.90. On December 17, 1962, Eunice J. Vinet executed the installment note which is the subject of this suit to Lagarde in the amount of $15,378.32. Both of these notes contained the following provision for an attorney's fee of 20% of the balance due in the event the note was placed in the hands of an attorney for collection:

"It is further agreed that in the event this note is placed in the hands of an attorney for collection, the obligors hereunder will pay a reasonable attorney's fee which shall not be less than 20% of balance due or a minimum of $25.00   *   *   *"

The big [2] note also contained an acceleration clause predicated upon the death of the maker:

"The entire unpaid principal balance shall at once mature and become immediately due and payable in full in the event of the death of the undersigned."

In addition, a Compromise Agreement executed contemporaneously with the big note contained a provision that if the accelerating contingency occurred, then the entire unpaid balance of the note together with interest at the rate of 6% "shall immediately become due and payable without necessity of notice or any affirmative action whatsoever,   *   *   *"

At the time of Mr. Vinet's death on March 11, 1963, all installments then due on the big note had been paid in full; but the small note was in default, and Lagarde had already filed suit on it against Eunice J. Vinet and Hebert in a Louisiana State Court. Mrs. Vinet, appellee, became administratrix of Vinet's succession.

Lagarde executed and forwarded to Mutual, on March 21, 1963, a request for payment of the unpaid principal and interest on the big note as of the date of the death of Mr. Vinet and also a request for payment of the unpaid principal, interest, and attorney's fees on the small note as of the date of death of Vinet. No attorney's fees were claimed on the big

---

1. Summary judgment was entered by the Trial Court. This is a typical case for the rendition of summary judgment, for the facts are not in dispute. As stated by counsel for appellee: "The only thing Mrs. Vinet will question will be the effect of the various instruments."

2. Throughout the record the two notes executed by Vinet are referred to as the "small note" and the "big note."

note. A copy of this letter was allegedly sent to Mrs. Vinet's attorney, but he denies having received it.

Meanwhile, on March 20, 1963, Mrs. Vinet's attorney formally requested Mutual not to pay any claim on the small note because of the state court proceedings in which liability was being contested, and, in addition, asked that payment be withheld on the big note as the succession recognized the obligation and would pay it in due course.[3] On March 28, 1963, Lagarde was notified by Mutual that, because of Mrs. Vinet's instructions, it could not honor the request for payment. The insurance company also wrote to Mrs. Vinet's attorney that no payment would be made until an amicable settlement had been reached between the parties involved. On the same day, March 28, 1963, Lagarde executed and forwarded to Mutual an amended Request for Payment of Death Benefits, and at this time it demanded 20% attorney's fees as provided for in the big note. This request was accompanied by a letter, a copy of which was sent to Mrs. Vinet, calling certain provisions of the aforementioned assignment to the attention of Mutual. Also, on that same day, Lagarde by its attorney's letter made a formal demand on Mrs. Vinet and upon the Succession of Eunice J. Vinet for payment of the big note by April 2, 1963, including principal, interest, and attorney's fees. On April 9, 1963, Mutual paid Lagarde the unpaid balance and interest on the big note, as of April 10, 1963, but no attorney's fees were paid.

On June 13, 1963, Mrs. Vinet, as beneficiary under the five policies, filed the instant suit against Mutual in the United States District Court for the Eastern District of Louisiana, New Orleans Division, to recover the unpaid balance on the policies. In the complaint no credit was allowed Mutual for the amount paid by it to Lagarde to satisfy the principal and interest due on the big note. Mutual counterclaimed by interpleading Lagarde and Mrs. Vinet, pursuant to Rule 22, F.R.Civ.P., deposited the fund into the registry of the court, and was ultimately released from the suit on its own motion for summary judgment. In the contest remaining, Lagarde sought, *inter alia*, $2,904.70 attorney's fees on the big note, all costs, and also a reasonable attorney's fee in the federal court proceeding. Mrs. Vinet sought from Lagarde, *inter alia*, legal interest on the amount in the registry over and above the amounts to which Lagarde was entitled. On motion and cross-motion for summary judgment, the court disallowed the claims of both parties.[4]

The first question we must reach is whether it was incumbent on Lagarde, as holder of the note, to make a formal demand on the maker's succession or his legal representatives in order to activate the acceleration clause and mature the entire note. Where an acceleration clause predicated on a particular contingency, such as default or death of the maker, does not expressly require the exercise of an option by the holder in order to accelerate all installments, the American

3. "I am writing this letter both as the attorney for the succession of Eunice J. Vinet, as well as the attorney for Nancy Duet Vinet, the beneficiary under the above policies, to put your company on notice that it is not to pay any claim of Lagarde Finance Company on the promissory note dated December 8, 1961 in the original amount of $3,699.90.
"First, it is the position of the Succession of Vinet that it is not indebted on that obligation to Lagarde Finance Company, and, second, it is the position of the beneficiary that the obligation is not secured by the assignment of September 10, 1958. If your company chooses to

pay this obligation, then it shall do so at its own risk.
"*Likewise, it is requested in behalf of the beneficiary that your company withhold payment on the other obligation of $14,378.32, as the Succession of Eunice J. Vinet, acting through the Administratrix duly appointed by an order of Court dated March 19, 1963, has recognized this obligation as an obligation of the succession and will pay the account out through the succession.*" (Emphasis supplied.)

4. Lagarde's claim on the small note was compromised in the trial court, and it is not in issue on this appeal.

courts have disagreed as to whether the provision is self-operating.[5] We have found no Louisiana authorities which are explicit on this point, but it is probable that Louisiana would not require formal demand to accelerate the remaining installments in light of their general attitude of enforcing contractual provisions in strict accordance with their terms.[6] Nevertheless, we need not reach this question, for we conclude that no notice or demand for payment was necessary in this case in light of Mrs. Vinet's conduct, through her attorney.[7] The record conclusively establishes that Mrs. Vinet, from the outset, treated the death of her husband as having accelerated all installments on the note. She, as provisional administratrix of his succession, would certainly be charged with knowledge of the terms of his obligations, and her subsequent conduct demonstrated such an awareness. On March 20, prior to the time Lagarde forwarded its request for payment to Mutual, Mrs. Vinet's attorney asked Mutual not to pay "the other obligation of $14,378.32, as the Succession of Eunice J. Vinet * * has recognized this obligation as an obligation of the succession and will pay the amount out through the succession." Subsequently, after having been notified that Lagarde expected immediate payment out of the insurance proceeds, she continued to treat the entire balance as immediately due in her correspondence with Lagarde. In addition, Mr. Vinet executed a Compromise Agreement with Lagarde prior to his death which provided:

"Vinet specifically agrees that * * in the event of the happening of any event or contingency which under the provisions of said note or of any instrument securing the payment of said note would have the effect of accelerating the maturity of the unpaid principal balance of said note, then in any such event the entire unpaid principal balance of said note together with interest thereon at the rate of 6% to the date of the default giving rise to such acceleration shall immediately become due and payable without necessity of notice or any affirmative action whatsoever, * * * "

Although Mrs. Vinet was not a party to this instrument, her rights and the rights of the succession would seem to be subject to the decedent's obligations. Also, she joined in the assignment of the life insurance proceeds, and her right to those proceeds is subject to all the terms of the assignment. We think the record establishes unequivocally that Mrs. Vinet, through her attorney, knew that Lagarde expected prompt payment of the entire obligation. Indeed, invocation of the acceleration clause could have been the only basis for Lagarde's insisting upon payment, as no installment was owing on the note at Mr. Vinet's death. Certainly, in the above circumstances, formal demand addressed specifically to Mrs.

5. Some courts have read into an automatic acceleration clause a requirement that the holder take some affirmative action to cause acceleration of all remaining installments. For a collection of the authorities, see 159 A.L.R. 1079.

6. St. Charles Dairy, Inc. v. Hayes, 233 La. 217, 96 So.2d 494 (1957), is not inconsistent with the above conclusion. There the notes provided for acceleration of all installments at the *option* of the holder, and the court held that notice to the debtor was necessary to activate the option.

7. See footnote 1. On March 28, 1963, attorneys for Lagarde received a letter from the office of Mutual in New Orleans

dated. March 27, 1963, which read in pertinent part as follows:

"Our Home Office has asked us to give you this information.

"On account of the protest received from Attorney, Paul J. Thriffiley, Jr., we cannot proceed with payment until dispute is amicably settled.

"The Company has requested us to advise you and the assignee that they cannot proceed with payment on account of protest by attorneys for the beneficiary.

"The Company wrote to Mr. Thriffiley and advised him that no settlement will be made until an amicable settlement has been arrived at between the parties involved."

Vinet, as provisional administratrix of the succession, was unnecessary in order to activate the expressly automatic acceleration clause of the note.

We now turn to the question of Lagarde's right to collect attorney's fees stipulated in the note. Louisiana courts have consistently enforced provisions for a stipulated percentage of an obligation as attorney's fees, without regard to whether the fees have been earned. E. g., Renshaw v. Richards, 30 La.Ann. 398 (1878); First Nat'l Bank of Vicksburg v. Mayer, 129 La. 981, 982, 57 So. 308 (1912). Provisions of this type have generally been treated in the Louisiana jurisprudence as a stipulation for liquidated damages, e. g., W. K. Henderson Iron Works & Supply Co. v. Meriwether Supply Co., 178 La. 516, 152 So. 69 (1934); Pugh v. Houseman Roofing Co., 165 La. 795, 116 So. 189 (1928); First Nat'l Bank of Vicksburg v. Mayer, supra; Succession of Foster, 51 La.Ann. 1670, 26 So. 568, 572 (1899); Hansen v. Their Creditors, 49 La.Ann. 1731, 22 So. 923 (1897), and they have been enforced in strict accordance with the terms of the particular provision, e. g., Succession of Foster, supra; Maurin v. Adam Lumber Co., 140 So.2d 804 (La.App.1962).

The appellee relies heavily on the cases of St. Charles Dairy, Inc. v. Hayes, 233 La. 217, 96 So.2d 494 (1957), and Holstead v. Lewis, (La.App.2d Cir.1935) 160 So. 834, 835, contending that the holder must show that it was necessary to turn the note over to an attorney for collection before the stipulation for attorney's fees can be enforced. We think those cases are neither apropos nor inconsistent with the conclusions we reach.

Holstead v. Lewis was a situation in which the holder of a demand note led the debtor's administrator to believe that she would not expect immediate payment even though the obligation was mature. Then, without notifying the debtor of her desire to terminate the period of indulgence, the holder demanded attorney's fees and turned the note over to an attorney for collection. The Louisiana court concluded that the holder, having sanctioned nonpayment of a mature obligation, was estopped to enforce the attorney's fee provision without first notifying the debtor of his change of heart. While language .in Holstead introduces some equitable considerations into the law of attorney's-fee provisos and may stand for the proposition that the debtor must be given some opportunity to avoid the payment of attorney's fees,[8] the instant situation is certainly not comparable. Mrs. Vinet was never lulled into the belief that prompt payment was not expected; on the contrary, she was aware from the outset that full, prompt payment was desired, and she had both opportunity and a ready means of making payment without incurring the additional obligation of attorney's fees. Furthermore, the note in Holstead provided for attorney's fees "incurred" in the collection of the note. In order for the holder to sustain her burden of proving that the fees were "incurred," it was incumbent on her to show that it was necessary for an attorney to undertake action to collect the obligation. In the instant case there was no requirement that the expenses be incurred, but merely that the note be placed in the hands of an attorney for collection.

8. There is similar dictum in the case of Succession of Foster, where the Louisiana Supreme Court stated:
"If the litigants before this court had themselves left the word 'necessary' out of their contract, and had merely agreed that the fees should be paid 'in case of resort to legal proceedings,' the probabilities are that even in that case the mortgagee would not have been allowed to recover upon the basis of 'legal proceedings' wholly unnecessary, or based upon a necessity entirely of her own making."
51 La.Ann. 1670, 1681, 26 So. 568, 572 (1889). Hence, Louisiana has long recognized the proposition that a provision for attorney's fees cannot be invoked where the holder of the note has so acted as to cause the debtor to believe that immediate payment is unnecessary.

The St. Charles Dairy case merely bears out the general proposition mentioned above that stipulation for attorney's fees will be enforced in strict accordance with the terms of the particular provision. There the Louisiana Supreme Court held that the holder had to prove that it was necessary that he resort to legal proceedings in order to collect the note. Its conclusion, however, was based upon the clear stipulation in the note in question that the fees would be due "[i]n the event it becomes necessary to place this note * * * in the hands of an attorney for collection or suit. * * * *" 9

We think the Louisiana Court of Appeal, Fourth Circuit, correctly stated the distinction between that situation and the situation before us as follows:

"Our attention is directed to St. Charles Dairy, Inc. v. Hayes, Jr., 233 La. 217, 96 So.2d 494, in which the Supreme Court, referring to Succession of Foster, 51 La.Ann. 1670, 26 So. 568, said that, where the holder of a note attempts to enforce such a provision for an attorney's fee, 'the burden rests upon the plaintiff, seeking to recover, * * * to show that there was a necessity for so doing * * *.' However, a reading of the decision in Succession of Foster, supra, indicates that that was so held only because the note itself provided that the attorney's fee would be due only if it appeared that there was 'necessity' for employing the attorneys. The Court discussed the wording of such clauses and said:

'The contracting parties were at liberty to agree that attorney's fees should be paid in the particular case for which, as a matter of fact, provision has been made,

or they might have agreed that they should be paid where the contingency was more imminent or more remote. Thus, instead of agreeing that the maker of the notes should pay such fees "in case it becomes necessary to resort to legal proceedings for the recovery of the amount of said notes, or any part thereof, which fees are hereby fixed at ten per cent on the amount sued for," as their contract reads, they might have imposed such liability on the maker of the notes in the event of their nonpayment at maturity, *with or without* previous demand and refusal or neglect to pay * * *.' (Emphasis supplied.)

"In other words, what the Supreme Court said in Succession of Foster and approved in St. Charles Dairy, Inc. v. Hayes, Jr., was that if a note requires a showing of necessity for the employment of attorneys, before the fees may be claimed, the plaintiff must show that amicable demand had produced no results and that, therefore, there was necessity, but that if such a note merely provides that the fees would be due 'in event of * * * nonpayment at maturity,' then all that would be necessary would be to show nonpayment. The note in the case before us does not require that necessity be shown, but provides only that the attorney's fees will be due 'in the event this note is not paid at its maturity and is placed in the hands of an attorney at law for collection * * *'. Accordingly not only do the facts here show that demand was made, but the law as established by the Supreme Court in the two cases cited *gives the holder of the note the right to demand the*

9. The following excerpt from the opinion in the St. Charles Dairy Case could form the basis for a valid distinction between it and the instant case:

"Furthermore, there is no evidence in the record that the holder of the note, before placing it in the hands of an at-

torney for collection or suit, made any effort whatever to obtain the payment of the note in full, and no evidence that such an effort, as said in the Foster case, would have been impracticable or useless." 96 So.2d at 497.

*attorney's fee merely as a result of the failure of the maker of the note to pay at maturity."* (Emphasis supplied.)

Maurin v. Adam Lumber Co., (La.App. 1962) 140 So.2d 804, 806–807. That language is controlling here. By the clear terms of Vinet's note, all the holder had to prove was that the obligation had matured, that the maker or his successor in interest had notice of the maturity of the obligation and had not paid, and that the note had been placed in the hands of an attorney for collection.[10] This latter fact was clearly established by an uncontroverted affidavit filed by Lagarde in support of its cross-motion for summary judgment.[11]

It may be that, in the circumstances, there was even a showing of sufficient necessity for legal action to justify recovery of the attorney's fees under a St. Charles Dairy type of clause. It is clear that Lagarde, in requiring the assignment of life insurance policies as security for the loans to Vinet, bargained for an immediate payment of the entire obligation out of the proceeds at his death. It was not unreasonable for Lagarde to refuse to subject payment to the delays and uncertainties of administration. In such circumstances, Lagarde may well have been justified in calling in its attorney when Mrs. Vinet first instructed Mutual not to pay. As noted above, we need not answer this question.

■ For the reasons stated above, Lagarde is entitled to 20% attorney's fees in the amount of $2904.70 as stip-ulated in the big note. Lagarde also requests that this Court award it the costs incurred in the district court and also award reasonable attorney's fees for services in the district court out of the fund deposited in the registry of the court. The allowance of costs and attorney's fees falls within the district court's discretion, and it may reconsider those questions on the remand of this case. We intimate no opinion as to what its decision on those questions should be.

■ Mrs. Vinet cross-appeals in this case from the refusal of the district court to award her legal interest on the amount of the insurance proceeds over and above the amount claimed by Lagarde on the theory that Lagarde, by requesting Mutual to withhold payment of the proceeds of the policy until its claim for attorney's fees had been satisfied, breached its undertaking in the original assignment of the policies that it would pay over any money it received from the insurance company under the assignment to which it had no claim. Breach of this obligation, she argues, entitles her to interest on the surplus under La.Civ. Code, Art. 1935. Her contention is without merit. Lagarde never received from Mutual any money to which it was not clearly entitled, and the delay in payment of the remaining proceeds, as demonstrated above, was clearly not due solely to the intransigence of Lagarde.

For the foregoing reasons, the judgment denying Mrs. Vinet interest is affirmed, and the judgment denying Lagarde the attorney's fees stipulated in the big note is reversed and remanded for further proceedings consistent herewith.

10. Mrs. Vinet suggests in her brief that Lagarde was unreasonable in requiring immediate payment of the note because of the 30-day indulgence granted to a succession in paying the decedent's accounts. See La.Code Civ.Proc. Art. 3302. However, Lagarde sought payment from the special security it had taken to insure prompt payment in the event of just such a contingency as the maker's death. Article 3302 has no bearing on Mrs. Vinet's instruction to Mutual not to pay any claim on the big note, as Lagarde was looking to its security rather than the succession for payment.

11. As we indicated earlier, the fact that the attorney's fees have not been "earned" is not relevant under Louisiana law. We note in this connection that the district court premised his disallowance of Lagarde's claim on this ground. He also noted, however, that he did not question Lagarde's good faith in seeking the fees.